(No. 33720.—

ELLA L. GREENWOOD, Appellant, *vs.* COMMERCIAL NA-
TIONAL BANK OF PEORIA *et al.,* Appellees.

*Opinion filed December 22, 1955.*

WALTER W. WINGET, and GEORGE TRAICOFF, both of Peoria, for appellant.

YOUNGE, FREDERICK & RUTHERFORD, of Peoria, for appellees.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

Ella L. Greenwood, appellant here and plaintiff below, brought this action in the circuit court of Peoria County seeking specific performance of an alleged oral promise of Harvey H. Williams, deceased, made in October, 1936, that if plaintiff would not quit the deceased's employ but would remain as Williams's housekeeper, on his death a home that Williams would buy or build and its contents would be the plaintiff's and that plaintiff was to have financial security for life, which terms plaintiff accepted and remained as his housekeeper. The suit was brought against Commercial National Bank of Peoria as administrator of the estate of Harvey H. Williams, deceased, Vivian W. Schnur as the sole heir-at-law of Harvey H. Williams, deceased, and Bernard Schnur as her husband.

The defendants denied generally the allegations of the complaint and set forth as affirmative defenses (1) the Statute of Frauds, there being no writing, (2) that the agreement is vague, indefinite, uncertain, ambiguous, unfair, unjust and unconscionable, (3) that the plaintiff's services were not referable to nor did they point or supply the key to the alleged promise of decedent. In addition,

defendants counterclaimed for possession of the premises and the personal property in question.

The cause was referred to a master in chancery who heard and reported the evidence and found the issues for the plaintiff. Upon a hearing on the exceptions to the master's report, the chancellor sustained those exceptions, ruled that plaintiff should not have the relief prayed for and that defendants should have possession of the real and personal property involved. An appeal has been taken to this court from the decree of the trial court, a freehold being involved.

The complaint alleges that Harvey H. Williams, a widower, first met the plaintiff in the year 1931. At the request of Williams, plaintiff went to work for Williams, as a housekeeper for him and a minor daughter, at no fixed salary at the inception of said employment. For the services performed by the plaintiff during the first month of such employment, Williams paid plaintiff the sum of $20 and furnished her room and board. The employment continued and plaintiff was compensated in the same manner from 1931 through May, 1936, when she became ill and was hospitalized. A three-month convalescent period followed during which time plaintiff resided at the home of a sister. Williams meanwhile employed two different housekeepers, neither of whom were to his satisfaction. During the last month of convalescence of plaintiff, Williams asked plaintiff to resume her position as housekeeper, and on or about August 1, 1936, she again took up her duties in that capacity.

Prior to August, 1936, Williams and plaintiff occupied rental houses and had lived in four different houses during her employment. Late in August, 1936, they moved to a fifth rented house. On or about October 1, 1936, plaintiff informed Williams that because of the marriage of Williams's daughter and her departure from the home, there was no need for plaintiff to remain as housekeeper; further-

more, plaintiff was not able to do any heavy housework, that she could not endure the decedent's constantly moving to rented houses and that she would leave his services. Thereafter, on October 22, 1936, plaintiff alleges that she was promised orally by Williams that he would not move around and would buy or build a home, that if plaintiff would stay and keep the home up she would have the home including its contents and the car if anything should happen to said decedent, and that plaintiff would be well provided for and that she would never have to work for anyone else; that plaintiff informed Williams that she would remain as his housekeeper on those terms.

Immediately thereafter, on October 22, 1936, Williams purchased the real estate in issue, and finished extensive construction in August, 1938, whereupon Williams and plaintiff moved into the house. There Williams and plaintiff resided until Williams's death, intestate, on September 29, 1947.

The complaint further stated that in 1941 Williams increased the monthly cash salary of plaintiff from $20 to $25 per month to compensate her for certain laundry services. Shortly prior to Williams's death in 1947, plaintiff was offered part-time employment with a Peoria bank. Out of the conversations about that, plaintiff and Williams reached an agreement whereby he agreed to increase her cash salary from $25 per month to $40 per month if she would continue to work full time as his housekeeper and not take part-time employment elsewhere. She stayed as full-time housekeeper and received two $40 monthly payments, the last of which was made after Williams's death.

The cases allowing specific performance to enforce an oral agreement to will or devise property to another, in consideration of service to be rendered, are universally those in which a gross fraud would be suffered if the promise of specific performance were denied. In considering the contention that equity should decree specific performance of

the alleged parol agreement in this particular case, we are to be guided by the cautionary rules and equitable principles which have developed from innumerable cases of this nature and which are succinctly summarized in *Linder* v. *Potier,* 409 Ill. 407, 411, 100 N.E. 2d 602, 604, as follows: "(1) Courts of equity accept with caution evidence offered in support of a contract to make disposition of the property of a deceased person different from that provided by law; (2) The contract to support it must be clear, explicit and convincing; (3) The contract may be based upon services, support and care, and if the value of such services may be estimated in money, or for which a recovery might be had, such performance will not take the contract out of the Statute of Frauds, except in case the statute of limitations bars recovery, or where the services cannot be adequately compensated; (4) Specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances; (5) It is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief, and where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied."

Our attention in this cause shall be first directed to the principle that the evidence necessary to support a decree of specific performance must be clear, explicit and convincing. In this regard we have held that the proof must establish the parol contract in certain, definite and unequivocal terms and be so convincing that it will leave no doubt in the mind of the court. (*Williams* v. *Corcoran,* 346 Ill. 105; *Galapeaux* v. *Orviller,* 4 Ill. 2d 442.) Or, as the rule has sometimes been stated, where one of the parties is dead and unable to give his version of the matter, the heirs being necessarily limited to collateral facts, circumstances and matters, the court is not compelled to believe a witness simply because he testifies to the contract, but such testi-

mony, often given by interested witnesses, will be closely scanned and tested by its own inherent probability or improbability and by ordinary rules of human conduct under similar circumstances.

The burden of proof is upon the party seeking to establish the contract. In the instant case there is no testimony by any witness who was present or who heard any conversation between Williams and plaintiff on or about October 22, 1936, at the making of the agreement as alleged in the complaint. The record is void of any testimony of the meeting of the minds of a direct, positive agreement between Williams and plaintiff. Numerous witnesses testified concerning conversations with Williams, that he repeatedly made statements to the effect that "Mrs. Greenwood would always have something;" that "she would always have something;" that "she would be taken care of;" that "I'm going to make a Will that will take care of Ella all her life;" that "she would always be provided for;" that "I will see that she is taken care of;" and that "she would be financially taken care of;" that "She would never have to work. She would always be provided for." The disconnected evidence in regard to the alleged contract amounted to nothing more than declarations of testamentary intention on the part of Williams. That he intended to do something for her may be true, but such mere statements and intentions are not sufficient. Instead of being complete and certain as to its terms, the proof in this case does not warrant the inference that a contract of any kind was made. Mere expressions of intention to devise property cannot satisfy the requirements. Nor can we agree with the argument of plaintiff that a convincing implication that a contract existed from the acts of the parties and statements of the deceased is sufficient to bring this case within the purview of the rule set forth in *Linder* v. *Potier* which requires the contract relied upon to be clear, explicit and convincing.

During the course of the trial, Bernard Schnur, one of

the defendants, entitled to a dower interest in the real estate that Vivian W. Schnur might inherit from Williams, testified on behalf of defendants to a payment of $40 made by him after Williams's death to plaintiff for services rendered the deceased during the month of September, 1947, and a receipt given by plaintiff to such witness. Upon rebuttal, plaintiff took the stand and was asked concerning the $40 transaction and the events with Williams pertaining to her entire contract calling for monthly payments to her, commencing October, 1936, to show what the entire contract was. An objection to her testimony was sustained and a proper offer of proof was made that she would testify as to the entire contract between her and the deceased. The offer of proof was rejected. Plaintiff urges that under the provisions of the third subparagraph of section 2 of the Evidence Act (Ill. Rev. Stat. 1953, chap. 51, par. 2,) the door was opened to permit plaintiff, in rebuttal, to testify as to her entire contractual and salary relationships with decedent. The applicable section of the statute provides as follows: "Third—Where, in any such action, suit or proceeding, any such party suing or defending, as aforesaid, or any persons having a direct interest in the event of such action, suit or proceeding, shall testify in behalf of such party so suing or defending, to any conversation or transaction with the opposite party or party in interest, then such opposite party or party in interest shall also be permitted to testify as to the same conversation or transaction."

There is no evidence in this case that Bernard Schnur was acting as agent for his wife or as agent for the deceased as contended by plaintiff or that plantiff advanced such contentions in the trial court. On the other hand the record clearly indicates that Bernard Schnur's only interest in this suit is by way of inchoate dower in the real estate in question, from which he would benefit only in the event he outlived his wife. The general rule in Illinois is that an inchoate right of dower is not sufficient to give one an

interest in the results of the suit. (*Heineman* v. *Hermann,* 385 Ill. 191; *Pyle* v. *Pyle,* 158 Ill. 289.) Under this rule, the fact that Bernard Schnur might have an inchoate right of dower, if the title to property in question was found to be in his wife, would not give him such an interest in the results of the suit as to render him incompetent as a party in interest under the third subparagraph of section 2 of the Evidence Act. There were certain statements attributed to plaintiff to which she was entitled to reply, but counsel did not offer her as a witness for this purpose, which is permissible under the statute, but offered her as a general witness, which was objectionable under the same statute. Under the facts and circumstances here before us, it was not error to refuse the rebuttal testimony offered by the plaintiff.

The decree of the circuit court of Peoria County is affirmed.

*Decree affirmed.*