ALENE MARIE VALENTINE SKURAT, Plaintiff-Appellee, *v.* CLARA KELLERMAN, Indiv. and as Adm'r of the Estate of John Bathon, Deceased, *et al.*, Defendants-Appellants.

Fifth District No. 76-217

Opinion filed September 27, 1977.

R. K. Peek and James W. Campanella, both of Peek and Gandy Law Offices, of Du Quoin, for appellants.

Don Johnson, of Hohlt, House, DeMoss & Johnson, of Pinckneyville, for appellee.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

Alene Marie Valentine Skurat brought this suit in the circuit court of Perry County against Clara Kellerman, individually and as the administrator of the estate of John A. Bathon, and against various other relatives of the deceased, for specific performance of an oral agreement to devise real estate. A decree was entered finding in favor of the plaintiff, from which decree the defendants have appealed.

In 1959, the plaintiff moved from Chicago to the farm home of her bachelor uncle, John A. Bathon, the decedent. The move occurred after John Bathon's brother, Joe Bathon, who had lived with John, died. At the

time plaintiff moved to the farm, she was unemployed, but she had previously held employment in the Chicago area. She moved to the farm at the request of John Bathon, who was then in his seventies.

Plaintiff lived at the farm continuously from 1959 until John Bathon's death on January 28, 1970. Plaintiff did all the housework, cooking, washing, and ironing for herself, her uncle, and her three children. She helped with field work, and the cattle, hogs and chickens, and was not paid for her work. In 1967, she ordered and paid for a new water system, sink, and kitchen cabinets at a cost of approximately $700. She lived and worked at the farm for a period of 10 years. This testimony was uncontradicted and was corroborated in part by one witness for the defense.

During his lifetime, decedent made numerous statements to various old friends that plaintiff and her son (before her twins were born) "* * * will never have nothing to worry about because this is their place." After the twins were born, he made the same statements relative to plaintiff and all of her children. He had not put it in "black and white" because "the lawyer wanted too much money." One person, Nicholas Bochantin, stated that the decedent told him several times, words to the effect:

> "I'm getting old. I need someone to take care of me because if I don't, there is no one else will help me and I don't want to go to a nursing home. And Alene stayed with me and washed my clothes and prepared the meals. She can live and have the place."

He stated that decedent said he would "will it to her." Mr. Bathon did not execute a will, and died intestate in 1970.

The issue here is whether plaintiff is entitled to specific performance of an alleged oral contract between herself and the decedent to devise the farm to her at his death in consideration for her services rendered, which enabled him to stay on the farm and out of a nursing home, or whether the same is banned by the Statute of Frauds (Ill. Rev. Stat., 1975, ch. 59, par. 2).

The basic principles which apply to this case are stated well in *Wessel v. Eilenberger* (1954), 2 Ill. 2d 522, 527-28, 119 N.E.2d 207, 210-11, where the court said:

> "The cases allowing specific performance to enforce an oral contract to will or devise property to another, in consideration of services to be rendered, are universally those in which a gross fraud would be suffered by the promisee if specific performance were denied. The courts of equity will not permit the Statute of Frauds, the only purpose of which is to prevent fraud, to be used where the effect will be to accomplish a fraud, and if the facts are such that it would be a virtual fraud to permit the defendant to interpose the statute, a court of equity will not listen to that

defense. Limitations placed upon this equitable rule are (1) that the contract must be proved by competent evidence, and be clear, definite, and unequivocal in terms, and (2) that it must appear that the promisee cannot be made whole by damages, or by other adequate remedy at law. The following principles are applicable to such a case: (1) Courts of equity accept with caution evidence offered in support of a contract to make disposition of the property of a deceased person different from that provided by law; (2) the contract to support it must be clear, explicit and convincing; (3) the contract may be based upon services, support and care, and if the value of such services may be estimated in money, for which a recovery might be had, such performance will not take the contract out of the Statute of Frauds, except in case the Statute of Limitations bars recovery, or where services cannot be adequately compensated; (4) specific performance is not a matter of right, but rests in the sound discretion of the court, to be determined from all the facts and circumstances; and (5) it is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief, and where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied. *Linder v. Potier*, 409 Ill. 497."

The difficulty of proving a contract reasonably certain as to the terms and the subject matter by evidence which is clear, explicit and convincing has been discussed as well. The problem is intensified by exclusion of the testimony of the person seeking relief by reason of section 2 of the Evidence Act, the so-called Dead Man's Act (Ill. Rev. Stat. 1969, ch. 51, par. 2).

In *Yager v. Lyon* (1929), 337 Ill. 271, 169 N.E. 222, the court said at pages 273-74:

"It is not necessary that the contract be proved by a third party who heard it made but it may be proved by declarations and conduct of the parties not in the presence of each other. (*Mayo v. Mayo*, 302 Ill. 584; *Fletcher v. Osborn*, 282 id. 143; *Kane v. Hudson*, 273 id. 350.) Possession must be taken in pursuance of the contract and must be exclusively referrable to the contract. (*Christensen v. Christensen*, 265 Ill. 170.) If improvements are to be made they must be valuable in comparison with the value of the property and must be something more than a tenant would make for his own comfort who expected to occupy the property for a number of years. (*Clark v. Clark*, 122 Ill. 388.) The contract may be based upon services, support and care. The performance of personal services the value of which may be estimated in money or for

which a recovery may be had at law will not take a contract out of the Statute of Frauds, because the law affords an adequate remedy. It is only where the Statute of Limitations bars a recovery at law, or where the improvements made or services performed cannot be adequately compensated at law, or where a failure to carry out the agreement will amount to a fraud on the promisee, that specific performance will be decreed. (*Flannery v. Woolverton*, 329 Ill. 424; *Stephens v. Collison*, 313 id. 365; *Weir v. Weir*, 287 id. 495; *Dalby v. Maxfield*, 244 id. 214.)"

In *Yager v. Lyon* (1929), 337 Ill. 271, 169 N.E. 222, the court denied relief. There was uncontroverted testimony there that the plaintiff had moved in only three weeks prior to the death of his sister, that he was paying rent for the premises, and had performed very little, if any, personal services for his sister. There was no substantial change in his condition by reason of the contract, and its partial performance.

Similarly, in *Linder v. Potier* (1951), 409 Ill. 407, 100 N.E.2d 602, specific performance was denied to the plaintiff where there was testimony that she had maintained her own apartment, and had stayed with the deceased for approximately 50 days, and had been absent during most of one of the deceased's last illnesses shortly before death. The court, through a master, found that the value of the services rendered was disproportionate to the value of the premises involved, worth approximately $6,000 and that plaintiff had made no unusual sacrifices in the rendering of her services.

In contrast to that case, we examine the facts set forth in *Jatcko v. Hoppe* (1955), 7 Ill. 2d 479, 131 N.E.2d 84, wherein Mrs. Elizabeth Tomso entered into an agreement with her daughter, and son-in-law, to the effect that if they would fix up the house, and take care of her, she would make a will devising the real estate to this daughter. A great deal of work was done on the house, and at one time, Mrs. Tomso did draft such a will. Her daughter cared for her for 15 years, and during that time the decedent repeated several times that the house was her daughter's and that she was entitled to it for the work she and her husband had done. Mrs. Tomso apparently changed her mind at some point and revised her will so that each of her five daughters (or their heirs) received an equal share. In this case, the court did affirm the award of specific performance. The court stated at pages 485-86:

"In the instant case, by reason of section 2 of the Evidence Act, (Ill. Rev. Stat. 1953, ch. 51, par. 2,) defendant [the daughter] was precluded from testifying as to the terms or execution of any oral contract with her deceased mother, and the contract, if any, must be gleaned largely from circumstantial evidence. * * *

* * *

It is apparent, therefore, from all these circumstances—the

actual execution of a will devising the property to defendant shortly after certain major improvements were completed, the continuous course of property improvement by defendant and her husband, and the statements by decedent that the property belonged to Cecelia [the daughter]—that there was substantial evidence from which to infer that a valid contract to give the property to defendant had been made by decedent."

■■ The facts in the case before us are comparable to those in *Jatcko v. Hoppe* (1955), 7 Ill. 2d 479, 131 N.E.2d 84. The plaintiff did give up her life in Chicago, and move to her uncle's farm at his request when his brother died. She remained there for virtually all of the 10 years he remained alive working in the fields, caring for livestock and poultry, cooking, cleaning, and caring for her uncle who was then in his seventies and eighties. The deceased told numerous people that the farm would be hers, and that he was going to will it to her. Three weeks before his death, a neighbor who wanted to buy the place was rebuffed by the deceased, who said he was " * * * going to leave it to Miss Valentine and the kids." This same witness testified that it was his impression that decedent had it "willed to her."

Further, she bought and paid for a new water system, a sink, and kitchen cupboards in 1967, although it does not appear that it was part of her contract that she do so. This is distinguishable from the case of *Burke v. Burke* (1958), 12 Ill. 2d 483, 147 N.E.2d 373. There the plaintiff alleged that as part of his oral contract with his father, he promised to live on the farm, cultivate and operate it, maintain the fertility, keep the improvements in good repair, and maintain and furnish a house for the decedent during the rest of his life.

The court said in conclusion at page 487:

"The proof, viewed in the most favorable light for the plaintiff, shows that the plaintiff lived upon the farm, cultivated and operated it, and furnished a home for the decedent. None of the witnesses testified to that portion of the agreement which provided for maintaining the fertility of the soil and keeping of the improvements in good repair. Thus it is noted that there is a variance between the contract as alleged and the evidence adduced. Plaintiff is bound by his pleadings, and since he failed to prove the terms of the contract or his complete performance thereunder in the clear, definite and unequivocal manner required by our long established rules, he cannot have relief. A party to a suit, either in law or in equity, cannot have relief under proofs without allegations, nor allegations without proof in support. *Central States Cooperatives, Inc., v. Watson Bros. Transportation Co.* 404 Ill. 566; *Leitch v. Sanitary District*, 386 Ill. 433."

Such is not the case before us. We can infer from the facts and conduct of

the parties including the statements of the deceased to other people, that the farm was to be given to plaintiff if she cared for decedent, and he was not forced to spend his last years in a nursing home, and that she fully performed her contract.

■■ Defendants contend further that even if there was a contract, and even if plaintiff did perform the services described above, she can be compensated with damages. In *Jatcko v. Hoppe* (1955), 7 Ill. 2d 479, 131 N.E.2d 84, the same argument was made with regard to the daughter's 15 years of service to her mother, and the improvements to the home. The court considered the argument only in passing at page 487, where it said:

> "Inasmuch as defendant Cecelia Hoppe fully performed her part of the contract by rendering valuable consideration consisting of personal service to her mother and the expenditure of labor and money on substantial property improvements over a period of 15 years, for which defendant cannot be restored to the *status quo* by damages, the contract should be specifically enforced."

Similarly, in *Wessell v. Eilenberger* (1954), 2 Ill. 2d 522, 119 N.E.2d 207, the court recited the labors performed by the claimant, and the fact that she gave up her other home to care for the decedent, and passed over the question of whether she could have been compensated in dollars. This is despite the fact that in *Wessell v. Eilenberger* the claimant *actually did receive some wages* albeit at a reduced rate of pay.

In both of those cases, as in the case before us, it might be possible to assign a value for some of the services performed. But even so, the services were only part of the consideration these various women supplied to the respective decedents. In *Holmes v. Ackley* (1948), 400 Ill. 372, 81 N.E.2d 178, the plaintiff had moved in only nine months before the decedent passed away. The court said in that case at pages 378-79:

> "[A]s to just when parties can or cannot be adequately compensated without resorting to a court of equity is, in many cases, difficult of solution and must necessarily depend upon the circumstances as shown in each particular case.
>
> Under the facts as disclosed by the record here, the appellee left her place of residence and employment in Cairo and went to the home of the deceased for the purpose of taking care of her until her death, and apparently, for the purpose of establishing a home for herself in the future. This would present considerable difficulty in determining adequate compensation."

The facts of that case are quite similar to the one before us, and we agree that under facts such as those, the plaintiff could not be compensated by damages alone.

In view of this finding, defendants' contention that the court erred in not accepting an offer of proof as to plaintiff's dollar claim in probate

court is without merit. See *Fleming v. Dillon* (1938), 370 Ill. 325, 18 N.E.2d 910.

We do not believe the trial court abused his discretion in this case. It has been repeatedly held that the findings and judgment of the trial court in chancery and non-jury cases will not be disturbed by the reviewing court if there is any evidence in the record to support such findings. In *Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 163 N.E.2d 518, which was an action for ejectment, the supreme court said at page 102:

> "We have repeatedly held that a reviewing court will not substitute its judgment as to the credibility of witnesses for that of the trial court, unless the findings are manifestly against the weight of the evidence. Where a cause is heard by a chancellor without a jury, his conclusions on facts are entitled to the same weight as a jury verdict. *Johnson v. Fulkerson*, 12 Ill. 2d 69; *Eleopoulos v. City of Chicago*, 3 Ill. 2d 247."

The trial court in this case found the evidence "clear and convincing" in favor of the plaintiff. That finding is supported by evidence, and is not against the manifest weight of the evidence, and we therefore affirm the judgment of the circuit court of Perry County.

Affirmed.

CARTER, P. J., and G. J. MORAN, J., concur.