107 Ill. App.3d 1053 (1982)
438 N.E.2d 582
In re SPECIAL EDUCATION PLACEMENT OF STEVEN WALKER.  (STEVEN WALKER, A Minor, by Joyce Walker, his Mother and Next Friend, Plaintiff-Appellee
v.
JOSEPH CRONIN, Director of the Illinois Office of Education, et al., Defendants-Appellants.)
No. 81-1269.
Illinois Appellate Court  First District (4th Division).
Opinion filed July 1, 1982.
*1054 Brydges, Riseborough, Morris, Franke and Miller, of Chicago (John M. Collins, of counsel), for appellant Glenbrook High School.
Matthew D. Cohen, of Canel, Aronson & Whitted, of Chicago, for appellee.
Judgment affirmed.
JUSTICE LINN delivered the opinion of the court:
Plaintiff, Steven Walker, a resident of codefendant Glenbrook High School District No. 225, was an emotionally handicapped child, and by virtue of his handicap he was entitled to "a free appropriate public education" under the Education for All Handicapped Children Act (20 U.S.C. secs. 1401 et seq. (1976)); section 504 of the Rehabilitation Act of 1973 (29 U.S.C. sec. 794 (1976)); the education article of the Illinois Constitution (Ill. Const. 1970, art. X, sec. 1); the handicapped children article of the Illinois School Code (Ill. Rev. Stat. 1977, ch. 122, par. 14-1.01 et seq.); and the Rules and Regulations to Govern the Administration and Operation of Special Education in Illinois (Ill. Admin. Reg. 1979, art. I-XV) (hereinafter State Rules).
In June 1978, Steven's mother, Joyce Walker, dissatisfied with the recommendation of School District 225's multidisciplinary staff regarding Steven's educational placement and program for the following school year, requested an impartial due process hearing to challenge the recommendation.
On November 9, 1978, no due process hearing having been held, Mrs. Walker took the unilateral action of placing Steven at the Lakeside Children's Center in Milwaukee, Wisconsin. The due process hearing was finally held on November 16, 1978; the hearing officer recommended that Steven be placed at Lakeside and that defendant School District 225 assume full financial responsibility as provided by law. District 225 appealed the hearing officer's decision to the Illinois Office of Education, which determined that District 225 could provide an appropriate education for Steven and consequently that he was not eligible for private placement.
Thereupon, Mrs. Walker brought an action on behalf of Steven in the circuit court of Cook County pursuant to section 4 of the Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 267) seeking review of the decision of the Illinois Office of Education. The circuit court reversed the decision of the Illinois Office of Education, finding that, effective November 9, 1978, Steven was entitled to special education and related services in a residential school, and ordered District 225 to reimburse Mrs. Walker for the costs incurred by her to date, and thereafter to pay Lakeside for services rendered to Steven.
*1055 Defendants, the Illinois Office of Education and Glenbrook High School District 225, appeal the trial court's order. The issues presented for review are (1) whether Mrs. Walker may recover from District 225 the cost of Steven's placement at Lakeside despite the fact that she made the placement before an official determination that it was appropriate; (2) whether the services rendered to Steven at Lakeside were necessary special education and related services for which District 225 was required to pay; and (3) whether the trial court's determination that Lakeside was an appropriate placement for Steven while District 225's program was not appropriate is contrary to the manifest weight of the evidence. We affirm.

BACKGROUND
Plaintiff, Steven Walker, a resident of codefendant School District 225, transferred in September 1976 to Northbrook Junior High School from an off-campus junior high school for severely emotionally disturbed students. He was placed in the eighth grade special education program for the 1976-77 school year, but was "mainstreamed" for four classes. He subsequently was removed from two of these classes because of behavior problems. In February 1977 the junior high and high school special education and guidance staffs conducted an annual review of Steven's progress, and recommended that he be placed the following year in a half-day contained program for severely emotionally disturbed students with some mainstreaming and assistance from a social worker. Mrs. Walker was notified of this plan and assented to it.
During the second semester of the 1977-78 school year Steven's grades began to drop and his behavior to deteriorate. In May 1978, Mrs. Walker informed District 225 that she wanted to seek a private residential placement for Steven. She had reached this decision in consultation with staff members of the Irene Josselyn Clinic, where Steven had received private treatment for five years. In a letter to District 225's instructional supervisor of special education, Steven's therapist, Lisa Cohen, expressed her concern about Steven's "lack of psychological growth and development in the past two years." Ms. Cohen stressed that "we are running out of time. Steve is already fifteen and few good residential treatment facilities will consider a child of this age. Certainly a year or two later * * * finding a suitable treatment facility would become virtually impossible."
On May 23, 1978, Steven's annual review was conducted by District 225, and Ms. Cohen attended. The participants in the review recommended that during 1978-79 Steven continue in a program consisting of a half day of mainstreaming and a half day of containment. In June 1978 Mrs. Walker contacted Steven's principal to request an impartial due process hearing. On June 21 the instructional supervisor of special education at Glenbrook North wrote Mrs. Walker that she must address a written request for a due process hearing to the superintendent of District *1056 225, Dr. Forrest Sheely; Glenbrook North's program plans for Steven were enclosed.
The medical director of the Josselyn Clinic, Mary Giffin, M.D., subsequently wrote Dr. Sheely to advocate residential placement for Steven because of the severity of his emotional problems and his inability to function in any regular or special classroom setting. An independent report to District 225 by Robert Traisman, Ph.D., who had examined and evaluated Steven, recommended intensive psychotherapy and a stabilized environment for him.
On August 25, 1978, Mrs. Walker again requested a due process hearing, stating as grounds for the request: (1) her objection to the proposed special education placement; (2) failure of the District to consider evaluations by qualified outside personnel; and (3) failure of the District to comply with the State Rules in that, among other things, it failed to notify Mrs. Walker of both the staff review of Steven's progress and her right to attend the review session, and of her right to an impartial hearing. Dr. Sheely responded with a suggestion that a second multidisciplinary staffing should precede a due process hearing.
A second staff review meeting was held on September 19, 1978, with Mrs. Walker and Ms. Cohen attending to advocate residential placement. The review board recommended, however, that Steven's current program be continued. Steven began to attend classes at Glenbrook North the following day, but a week later, on September 26, 1978, Mrs. Walker again requested a due process hearing. On September 29 she addressed a fourth demand for a hearing to Dr. Sheely. The hearing was finally scheduled for November 16, 1978. Meanwhile Steven's behavior became violent and continued to deteriorate. Following a serious altercation with Steven a week before the scheduled hearing, Mrs. Walker, acting on the advice of Steven's therapists, concluded that an emergency placement at a residential treatment center was necessary. Previously Steven had sustained a serious leg injury, and it now appeared there was a danger of further physical injury to him in his existing environment. On November 9, 1978, suffering from extreme depression, Steven entered Lakeside Center. Steven remained at Lakeside and completed his secondary education. He is now enrolled in college.
The due process hearing was held as scheduled on November 16, 1978. The impartial hearing officer recommended that Steven be placed at Lakeside and that District 225 assume financial responsibility as of November 16, 1978. District 225 appealed the hearing officer's decision to the Illinois Office of Education, which issued an administrative order that Steven did not qualify for private placement under section 8.01 of the State Rules, which provides as follows:
"If a child exhibits exceptional characteristics which are determined *1057 in a multidisciplinary conference to be so profound, complex, or otherwise unique that no special education program offered by the public schools can adequately or appropriately meet his or her needs, the student shall be referred for placement in either a state-operated or a private facility."
(Ill. Admin. Reg. 1979, sec. 8.01.) The order additionally found that "Steven Walker's rights were not fully observed, in that due process procedures were not adequately followed by District 225."
After the Illinois Office of Education overruled the impartial hearing officer's conclusion that Steven's placement at Lakeside was appropriate, Mrs. Walker filed an action on Steven's behalf in the circuit court of Cook County seeking judicial review of the administrative decision of the Illinois Office of Education. (Ill. Rev. Stat. 1979, ch. 110, par. 267.) The action alleged that the defendants improperly denied Steven placement in a residential special education facility.
Upon conclusion of hearings, the circuit court issued its written memorandum and order to the effect that Steven was entitled to special education and related services in a residential school effective November 9, 1978; that Mrs. Walker was to be reimbursed by defendants for her expenditures to date; and that payment to Lakeside for services rendered to Steven was to be made by defendants. The trial court expressed the findings upon which its order was based as follows:
"[T]he Court finds clear evidence that Plaintiff Steven Walker is a child * * * [who] exhibits exceptional characteristics that are so profound, complex and unique that special education programs offered by Glenbrook Public School cannot adequately or appropriately meet his needs. The Court finds that Plaintiff Steven Walker requires special education courses that are inextricably integrated with related services of psychotherapy administered in a highly coordinated and structured residential school setting, with continual monitoring and supervision of his learning process and a keen awareness and insight to possible causes of Plaintiff's frustrations and blocking of his learning process. Plaintiff has met his burden of proof that the school district's proposed program was inappropriate. The prima facie presumption that the school district's program is appropriate has been overcome."

OPINION
The first argument presented on appeal by defendants-appellants is that the damages sustained by Mrs. Walker resulted from her breach of a legal duty, and she therefore should not be reimbursed for her expenses. The duty referred to was identified in Stemple v. Board of Education (4th Cir.1980), 623 F.2d 893, where the court construed the following statute:

*1058 "During the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents or guardian, be placed in the public school program until all such proceedings have been completed." (20 U.S.C. sec. 1415(e)(3) (1976).)
(A similar provision also appears in the Illinois School Code (Ill. Rev. Stat. 1979, ch. 122, par. 14-8.02) and Ill. Admin. Reg. 1979, sec. 9.23.2.) The Stemple court found that, "taken literally," this language creates a duty on the part of parents to keep their child in his educational placement while a hearing is pending; the duty then was found to negate a right to reimbursement for the tuition costs of a unilateral placement in a private school.
Defendants argue that an Illinois parent who violated the above-described duty under section 14-8.02 of the School Code by choosing to place her child in a private school before an official determination that such a placement was appropriate has no right to bring an action for damages to recover the costs. We disagree.
"[B]ecause we are certain that parents have the right to move their handicapped children to private schools, we view section 615(e)(3) as expressing a congressional preference rather than as creating a statutory duty." (Anderson v. Thompson (7th Cir.1981), 658 F.2d 1205, 1209.) The Anderson court concluded that the issue of a damages remedy therefore could not be resolved on the basis of this section, and focused its inquiry instead on whether section 615(e)(2) of the Education of the Handicapped Act (20 U.S.C. sec. 1415(e)(2) (1976)), which authorizes any aggrieved party to bring suit and directs the State or Federal district court to "grant such relief as the court determines is appropriate," includes damages as appropriate relief.
We find the approach of the Anderson court to be the preferable method of analyzing the question whether a parent is entitled to reimbursement for a unilateral placement. That court, we believe, correctly noted that the matter is one of statutory interpretation. In the case on appeal here, the question is whether the statutory statement that "the child shall remain in the then current educational placement of such child" is mandatory or directory. We think that in light of the fact that every child is legally entitled to "a free appropriate public education" (Ill. Rev. Stat. 1979, ch. 122, par. 14-8.02), the statement must be regarded as directory.
The primary goal of the statutory provision is an appropriate education for all handicapped children. Because disagreement between parents and schools about what is appropriate is inevitable in some cases, the *1059 statute provides procedures for resolving such disagreements, including a due process hearing that is available at the request of a dissatisfied parent. Resolution of such disagreements is a secondary goal that supports the overriding objective of providing an appropriate education for each child in light of his individual needs. A duty to seek such resolution in good faith is clearly implicit in the statute. If it were not, a school district could indefinitely block the transfer of a handicapped child by delaying the proceedings available under section 14-8.02 of the School Code, thereby triggering the parent's absolute duty to leave the child in his current educational placement. The absurdity and injustice of interpreting the requirement as mandatory is thus clear.
 1 Furthermore, the statute does not provide sanctions for removing a child from his current placement, which also indicates that the statutory provision is directory. "If [statutes are] mandatory, in addition to requiring the doing of the things specified, they prescribe the result that will follow if they are not done; if directory, their terms are limited to what is required to be done." (2A Sutherland, Statutes and Statutory Construction sec. 57.08, at 423 (4th ed. 1973)), quoting Hudgins v. Mooresville Consolidated School District (1925), 312 Mo. 1, 278 S.W. 769.) We therefore find that Mrs. Walker is not barred automatically from recovering damages for breach of a "mandatory" statutory duty in view of our finding that the statute is directory only.
The Anderson court identified two circumstances in which an award of damages might be appropriate. Both are situations in which it would be reasonable for a parent to take action to obtain appropriate services for her child without awaiting the outcome of lengthy administrative proceedings. "Parents should then be compensated for the costs of obtaining those services that the school district was required to provide." (658 F.2d 1205, 1213.) The first situation is one in which a child's physical health would be endangered if an alternative placement were not made. The second exceptional circumstance exists when the defendant has acted in bad faith by failing to comply with the statutory provisions for resolving a dispute about a child's educational placement.
Based on the record one might argue that both circumstances occurred in this case. Mrs. Walker made four requests of District 225 for a due process hearing. The requests were made over a five-month period before the November 16 hearing was finally held. Although section 14-8.02 provides that the school shall notify the parent of her right to an impartial due process hearing and shall conduct such hearing upon the parent's request, Mrs. Walker was not initially made aware of her right to a hearing, and the hearing was not held until after her fourth request. Instead of complying with her second request on August 25, District 225 held a second staff meeting on September 19, with no resulting change in *1060 its recommendation. Mrs. Walker was forced twice to request a hearing after this meeting before District 225 complied. Additionally, the record indicates that Mrs. Walker placed Steven at Lakeside the day after the incident of physical violence by him.
 2 The education of handicapped students, including education in private special education facilities pursuant to section 14-7.02 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 14-7.02), is the legal responsibility of the public school system, and must be provided free of charge to the student through the secondary level. (Elliot v. Board of Education (1978), 64 Ill. App.3d 229, 380 N.E.2d 1137.) As we have noted, the record indicates that there was a rather long delay on the part of District 225 in determining what placement was appropriate for Steven, and that there was an immediate threat to Steven's health in his existing situation. Accordingly, we hold that Mrs. Walker's placement of Steven at Lakeside was proper, and she is entitled to reimbursement of expenses from District 225.
The second issue raised by defendants-appellants is whether the services rendered to Steven at Lakeside were special education and related services for which District 225 was required to pay. Defendants argue that at Lakeside Steven received "only mainstream instruction," and that "[a]ccordingly, whatever moral or psychological support or psychotherapy Steven received at Lakeside could not have been a `related service' within the meaning of Rule 1.08a * * *." We disagree.
Defendants' argument seems to be that "only mainstream instruction" cannot be special education, and the other services provided by Lakeside were therefore not "related services." We cannot agree with this bootstrap reasoning, for which defendants offer no authority other than their bare conclusory statement. The flaw in defendants' reasoning is their assumption that classroom education can never be an element of special education, an assumption that, carried to its extreme, would lead to the absurd conclusion that special education could never include a general academic component.
Special education is "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." (Emphasis added.) (20 U.S.C. sec. 1401(16) (1976).) Related services include "transportation, and such developmental, corrective, and other supportive services (including * * * psychological services * * * and medical and counseling services * * *) as may be required to assist a handicapped child to benefit from special education * * *." (20 U.S.C. sec. 1401(17) (1976).)
*1061  3 The record indicates that at Lakeside Steven received instruction in an integrated treatment program specially designed to meet his unique needs. In Lakeside's on-campus school Steven was placed in classes with only six or eight other children in an effort to reduce the stress of a large class and provide more emotional stability for him. There was no "main stream." A single teacher taught all Steven's courses, providing security and an opportunity for Steven to develop a relationship with the person responsible for his education. Adjustments in Steven's educational program were made on a day-by-day basis. Supplemental services such as occupational or family therapy and psychotherapy were available. We think this program falls within the definitions of special education and related services; accordingly, we find no merit in defendants' argument.
Defendants' final contention is that the trial court's determination that Steven had educational needs requiring residential placement and that Lakeside was an appropriate placement for him is contrary to the manifest weight of the evidence. Again, we disagree. The presumption on appeal is that the trial court heard sufficient evidence on which to base his judgment, and the appellant has the burden of demonstrating that the record fails to support that judgment. (Hogan v. Braudon (1976), 40 Ill. App.3d 352, 352 N.E.2d 303.) The findings and judgment of the trial court in nonjury cases will not be disturbed by a reviewing court if there is any evidence in the record to support such findings. Brown v. Zimmerman (1959), 18 Ill.2d 94, 163 N.E.2d 518; Skurat v. Kellerman (1977), 53 Ill. App.3d 361, 368 N.E.2d 966; Swan v. Allstate Insurance Co. (1967), 89 Ill. App.2d 205, 232 N.E.2d 491.
 4 Contrary to the claim of defendants-appellants, we find ample support in this record, as outlined above, for the trial court's findings that Steven was an exceptional child in need of special education, that District 225 could not meet his needs adequately, and that Lakeside was an appropriate placement for him. For a judgment to be found contrary to the manifest weight of the evidence, an opposite conclusion must be clearly evident. (Raabe v. Maushak (1977), 55 Ill. App.3d 169, 371 N.E.2d 96.) Defendants failed to show that such was the case here.
For all of the reasons discussed above, the judgment of the circuit court is affirmed.
Affirmed.
JOHNSON, P.J., and JIGANTI, J., concur.