*In re* ESTATE OF ROBERT E. SPAULDING, Deceased (Virginia Tetzlaff, Plaintiff-Appellant, v. Michael J. Sottile, Indiv. and as Ex'r of the Estate of Robert E. Spaulding, Deceased, *et al.*, Defendants-Appellees).

First District (2nd Division) No. 1—88—1666

Opinion filed August 29, 1989.

Fred S. Posner, of Chicago, for appellant.

Charles Locker, of Chicago (Frank Wicker, of counsel), for appellees.

JUSTICE DiVITO delivered the opinion of the court:

Plaintiff Virginia Tetzlaff appeals from an order of the circuit court granting defendants' motion for summary judgment in an action to enforce an oral contract to make a will.

Robert Spaulding (Spaulding), the deceased in this case, was the director of a funeral parlor in Chicago. On June 8, 1978, he executed a will which provided that the bulk of his estate was to pass to his brother, William Spaulding, or if his brother should predecease him, to his brother's wife, Elizabeth Spaulding. William Spaulding died on February 25, 1982.

Spaulding was murdered on July 21, 1986. His estate was opened on September 10, 1986. On October 14, 1986, plaintiff commenced this action as a supplemental proceeding in the probate division against the executor and the legatees named in Spaulding's probated will, seeking specific performance of an oral contract to make a will leaving her Spaulding's entire estate with the exception of one ring.

Plaintiff's complaint alleges that (1) plaintiff "formed and maintained a bond of mutual love and affection" with Spaulding which led her on September 29, 1982, to move into his home at 5933 North Hermitage in Chicago; (2) plaintiff and Spaulding exchanged mutual

promises to marry on September 7, 1986; (3) from the time plaintiff moved in with Spaulding, she lived with him until he died "as his companion in affection and esteem, sharing the privileges of the home with him, giving aid, comfort, and assistance to him, sharing the expenses of living and the maintenance of the home with him, entertaining for him and his friends and acquaintances, and either paid or assisted in paying for items contributing to the mutual enjoyment and happiness of [Spaulding] and herself"; (4) in consideration for "the maintenance and continuation of their relationship[,]" Spaulding orally agreed on "numerous occasions" to make a will leaving plaintiff his entire estate with the exception of one ring; (5) in reliance on Spaulding's promise to make a will, plaintiff "maintained and continued" her relationship with him and made arrangements for their marriage; (6) Spaulding "attempted to fulfill" his contract with plaintiff by drafting and signing a document on March 8, 1986, which purported to be his will and to leave his property to plaintiff, and which, until his death, Spaulding "acknowledg[ed] and characteriz[ed]" as his "Last Will and Testament"; (7) plaintiff fully performed her obligations under the contract but Spaulding breached the contract by failing to execute a valid will leaving plaintiff all of his property; and, finally, (8) plaintiff is entitled to specific performance of the contract because she has no adequate remedy at law.

On July 17, 1987, plaintiff was deposed. Plaintiff testified at her deposition that in September 1982, after having known Spaulding for 23 years, she moved from 6731 Greenleaf in Woodridge, Illinois, to Spaulding's home at 5933 North Hermitage in Chicago. At first plaintiff and Spaulding slept in separate bedrooms, but beginning sometime in 1985, they shared the same bed and had sexual relations.

Plaintiff testified that she "cooked, cleaned, did laundry" and other "usual household chores[,]" but that prior to moving in with Spaulding, she never had any conversation with him regarding any services to be performed by her as consideration for living in his home. Near the end of September 1982, the month plaintiff moved in, she agreed to pay Spaulding $250 per month "as her share for living in [his] home." The cancelled checks included in the record indicate that plaintiff paid Spaulding $125 twice per month from January 1983 through July 15, 1986. The record also reflects that plaintiff wrote checks for party expenses in February 1984; for a wedding gift in April 1984; for radio batteries in March 1985; for a radio in September 1985; for television and video cassette recorder repairs in September 1985; for videotapes in November 1985; for window blinds and party expenses in October 1985; for video cassette recorder repairs in

January 1986; for party expenses in April 1986; and, finally, for catering costs in July 1986.

Plaintiff testified further that the subject of Spaulding's will was first raised by him in late 1983 or early 1984. Spaulding told plaintiff he would revoke his will and write a will to provide plaintiff with a "home and security for the future." Plaintiff admitted that Spaulding had initiated the conversation and that she had never told him that she was unhappy or dissatisfied, or that the $250 per month that she was paying was unreasonable. After that initial conversation, plaintiff and Spaulding would talk about the subject of Spaulding's will "every couple weeks or so." But plaintiff admitted that she never told Spaulding that she would leave if he did not make a will for her.

At her deposition, plaintiff produced a document dated March 8, 1986, and signed by Spaulding which indicated Spaulding's intention to leave plaintiff his entire estate with the exception of one ring. The document was given to plaintiff by Spaulding before Spaulding left for Florida on a vacation. Mark and Rose Wuertemburg gave Spaulding their permission over the telephone to sign their names as witnesses. According to Mark and Rose Wuertemburg, Spaulding told them that "it's all taken care of" and that he was keeping "his promise" to plaintiff to make a will in her favor. According to plaintiff, when Spaulding gave her the document, he told her to "keep it" and when he returned from Florida he told her that he was "going to change the other will and revoke it."

On March 21, 1988, defendants moved for summary judgment. Plaintiff resisted that motion with her own deposition testimony and affidavit, with copies of cancelled checks written by her payable to Spaulding, with the March 8, 1986, document, and finally, with affidavits of nine other persons. The affiants each stated that Spaulding had told them of his promise to make a will in plaintiff's favor in return for the services plaintiff had provided for him.

Defendants did not submit any counteraffidavits. On May 16, 1988, defendants' motion for summary judgment was granted.

## I

Plaintiff maintains that the trial court erred in granting summary judgment in favor of defendants because the facts, when considered in the light most favorable to plaintiff, establish the existence and terms of a valid contract to make a will. Relying on several Illinois Appellate Court cases, most recently *Skurat v. Kellerman* (1977), 53 Ill. App. 3d 361, 368 N.E.2d 966, plaintiff asserts that (1) Illinois law "permits wide latitude in determining what constitutes valid and suf-

ficient consideration for a contract to devise realty"; (2) she provided valid consideration in exchange for Spaulding's promise to make a will in her favor by "continuing the relationship and her contributions to it and adding her further contributions, personal, monetary and spiritual to the wedding preparations"; (3) the existence of the 1978 will is not sufficient as a matter of law to preclude a finding that the oral contract existed, given the evidence of "prolonged, faithful service by the promisee, coupled with Deceased's acknowledgements that he had provided, or intended to provide for the promisee to receive his property on his death"; (4) the March 8, 1986, document, although not a valid will, is nevertheless convincing evidence of the terms of the oral contract and Spaulding's attempt to fulfill his obligations under the oral contract; and (5) other clear and convincing evidence of the existence of the contract and its terms was provided by Spaulding's repeated acknowledgments to third persons of his commitment to make a will in plaintiff's favor.

Plaintiff asserts further that she has no adequate remedy at law, because her "companionship" and the "myriad services she rendered to Spaulding" are not susceptible of measurement in monetary terms. Plaintiff claims that "damages at law would be palpably inadequate recompense for the unkept contract to will her the home, and could not adequately reflect the value [Spaulding] contemplated in gratitude for the loving kindness, attention and affection evident in Plaintiff's personal services, monetary contributions to his household and social life, her promise to marry and her monetary, personal and spiritual contributions to the wedding preparations."

■■ Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) Summary judgment should be granted "only where the evidence, when construed most strongly against the moving party, establishes clearly and without doubt his right thereto." (*Motz v. Central National Bank* (1983), 119 Ill. App. 3d 601, 605, 456 N.E.2d 958.) Upon review of the trial court's entry of summary judgment, the appellate court must determine whether the trial court was correct in ruling that no genuine issue of material fact was raised and whether entry of judgment was correct as a matter of law. *Bernard v. Sears, Roebuck & Co.* (1988), 166 Ill. App. 3d 533, 519 N.E.2d 1160.

■ A contract to make a will supported by valid and adequate consideration is enforceable in a court of equity. (See *Burke v. Burke*

(1957), 12 Ill. 2d 483, 147 N.E.2d 373; *Jatcko v. Hoppe* (1955), 7 Ill. 2d 479, 131 N.E.2d 84; *Moreen v. Estate of Carlson* (1937), 365 Ill. 482, 6 N.E.2d 871.) However, in a suit for specific performance of a contract to make a will, the evidence of the existence of the contract and its terms must be clear and explicit and "so convincing that it will leave no doubt in the mind of the court." (*Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 440, 130 N.E.2d 753; *In re Estate of Konow* (1987), 154 Ill. App. 3d 744, 506 N.E.2d 450.) Mere statements by the deceased of his intention to make a will are not sufficient proof to warrant the inference that a contract of any kind was made. See *Greenwood*, 7 Ill. 2d at 441.

 Although a contract may be based upon "services, support and care," evidence of such acts does not necessarily provide sufficient proof that a contract existed. (See *Greenwood*, 7 Ill. 2d at 440.) In *Greenwood*, for example, the plaintiff alleged that she moved into the deceased's house and performed housekeeping chores in reliance on the deceased's promise to leave her the house, the contents of the house, and a car. (*Greenwood*, 7 Ill. 2d at 441.) "Numerous witnesses" testified that the deceased had stated that he would "take care of" and "provide for" the plaintiff. (*Greenwood*, 7 Ill. 2d at 441.) Affirming the decree of the circuit court rejecting the plaintiff's claim, the Illinois Supreme Court stated that "[t]he disconnected evidence in regard to the alleged contract amounted to nothing more than declarations of testamentary intention." (*Greenwood*, 7 Ill. 2d at 441.) The court stated that while it may have been true that the deceased intended to do something for the plaintiff, "such mere statements and intentions are not sufficient," and rejected the plaintiff's argument that the statements of the deceased together with the acts of the parties provided clear, explicit and convincing proof that a contract existed. *Greenwood*, 7 Ill. 2d at 441.

Likewise, in *Toms v. Lohrentz* (1962), 37 Ill. App. 2d 414, 185 N.E.2d 708, the statements of the deceased and the services rendered by the plaintiff were not sufficient to establish the existence of a contract to make a will. In that case, the plaintiff alleged that in reliance on the deceased's promise to make a will in her favor, she "sought no other male companionship, gave him a free dandruff treatment at the beauty parlor, bought stamps, clothing, license plates and photographic materials for him, frequently shopped for him and performed secretarial work for him from time to time." (*Toms v. Lohrentz*, 37 Ill. App. 2d at 416.) The court stated: "There isn't a syllable of evidence in this record that [the plaintiff] promised to do anything and thus a mutuality of promises is wholly lacking. Only through blind cre-

dulity could we conclude that the services rendered by [the plaintiff] were in reliance on [the deceased's] promise to make a will rather than the ageless human chemistry of male-female affinity." *Toms v. Lohrentz*, 37 Ill. App. 2d at 417.

█ █ In this case, plaintiff has similarly failed to present sufficient proof of the existence of a contract to make a will in her favor. As in *Greenwood* and *Toms*, Spaulding's statements to plaintiff and third persons that he would make a will in plaintiff's favor are mere statements of testamentary intent and not sufficient proof of the existence of a contract to make a will. Also, as in *Toms*, there is no evidence that the household chores, the expenses, or the "love" and "affection" returned by plaintiff were in exchange for Spaulding's purported promise to make a will rather than the result of ordinary "male-female affinity."

Nor does the document dated March 8, 1986, provide the clear, explicit and convincing proof required to show the existence of a contract to make a will. Although the March 8, 1986, document is some evidence of Spaulding's intent to leave plaintiff his property, it is not clear, explicit and convincing evidence of the existence of a contract to make a will in plaintiff's favor, or of the terms of such a contract. Significantly, Spaulding never bothered to execute a valid will in plaintiff's favor and never revoked his earlier will, even though he told plaintiff after he gave her the March 8, 1986, document that he would "change the other will and revoke it." Thus, contrary to plaintiff's assertion that the March 8, 1986, document is convincing proof of Spaulding's attempt to fulfill his obligation under a contract to make a will, that document could just as easily reflect Spaulding's intent to merely appease plaintiff and not to execute a valid will in plaintiff's favor. Certainly, the March 8, 1986, document does not provide clear, explicit and convincing proof of the existence and terms of a contract to make a will.

Even if the pleadings, affidavits, and other documents in the record, when construed in the light most favorable to plaintiff, provide sufficient proof of the existence and terms of an oral contract to make a will, we do not believe plaintiff would be entitled to equitable enforcement of the contract. " 'It is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief, and where the promisee shows no substantial change for the worse in his position in consequence of the agreement, relief will be denied.' " (*Greenwood*, 7 Ill. 2d at 440, quoting *Linder v. Potier* (1951), 409 Ill. 407, 411, 100 N.E.2d 602.) Indeed, "[t]he cases allowing specific performance to enforce an oral

agreement to will or devise property to another, in consideration of services to be rendered, are universally those in which a gross fraud would be suffered if the promise of specific performance were denied." *Greenwood*, 7 Ill. 2d at 439.

In *Skurat v. Kellerman* (1977), 53 Ill. App. 3d 361, 368 N.E.2d 966, for example, the plaintiff left Chicago at her uncle's request to live on his farm, cook, clean and care for him in his old age, work in the fields, and care for livestock and poultry. The plaintiff cared for her uncle for "virtually" 10 years before he died. During that time, the plaintiff's uncle had told "numerous people" that he was going to will her the farm. The trial court awarded specific performance of the agreement to make a will. On appeal, the court affirmed, stating that it could "infer from the facts and conduct of the parties including the statements of the deceased to other people, that the farm was to be given to plaintiff if she cared for decedent." *Skurat v. Kellerman*, 53 Ill. App. 3d at 365-66.

In this case, by contrast, the facts, when construed in the light most favorable to plaintiff, do not establish that plaintiff substantially changed her position for the worse in reliance on Spaulding's promise to make a will. By plaintiff's own admission, she moved in with Spaulding in September 1982 and the subject of Spaulding's will was not discussed until late 1983 or early 1984. Plaintiff plainly could not have moved into Spaulding's home or performed any services before the will was discussed in reliance on Spaulding's alleged promise to make a will. Plaintiff nonetheless argues that the facts construed in her favor show that she "continued" and "maintained" the relationship and also "continued" to perform household chores and pay for household and party expenses in reliance on Spaulding's promise to make a will.

However, even accepting plaintiff's suggestion that she continued her relationship with Spaulding because he promised to make a will in her favor, the facts do not show such substantial change for the worse in her position as would warrant equitable enforcement of the contract. Specifically, the services performed by plaintiff were plainly for her benefit as well as Spaulding's. Nothing in the record suggests that a "gross fraud" would result from a failure to specifically enforce the alleged promise to leave Spaulding's entire estate with the exception of one ring to plaintiff in exchange for such mutually beneficial services provided by plaintiff. Moreover, plaintiff has an adequate remedy at law to recover for many of the services allegedly performed in reliance on Spaulding's promise to make a will. Significantly, defendants do not claim that plaintiff's remedy at law is

barred by either the statute of limitations or the Statute of Frauds (Ill. Rev. Stat. 1985, ch. 59, par. 1 *et seq.*) and the cancelled checks produced by plaintiff herself establish that many of the services provided by plaintiff are susceptible of being valued in monetary terms.

## II

■ Finally, plaintiff maintains that the trial judge construed her suit as a palimony case and erroneously granted defendants' motion for summary judgment under *Hewitt v. Hewitt* (1979), 77 Ill. 2d 49, 394 N.E.2d 1204. In *Hewitt*, the Illinois Supreme Court rejected, as against public policy, judicial enforcement of agreements between unmarried cohabitants founded on sexual relations. Plaintiff argues that *Hewitt* is distinguishable because she does not allege sexual relations as the sole consideration for Spaulding's promise to make a will in her favor.

However, the record does not support plaintiff's contention that the trial court erroneously granted defendants' motion on palimony grounds. On the contrary, the trial court plainly relied on principles of contract law in ruling on the motion. The trial court stated that the issue to be decided was whether plaintiff and Spaulding had entered into an oral contract to make a will. The trial court correctly observed that "[i]n order to find that an oral contract to make a will is a valid contract, the evidence before the Court must be clear, explicit and convincing." The trial court also properly noted that "expressions of the deceased of a testamentary intent, are not sufficient to support the requirements to establish an oral contract." The trial court stated that it had reviewed the pleadings, deposition transcript, and affidavits in the light most favorable to plaintiff, and concluded that no genuine issue of material fact existed to withstand defendants' motion. Accordingly, the record does not support plaintiff's contention that the trial court ignored relevant law and improperly relied on *Hewitt* in ruling on defendants' motion.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.