ESTATE OF RAMON A. MUSCATO, Deceased-Appellant, v. NORTHWEST
NATIONAL BANK OF CHICAGO, Respondent-Appellee.

First District (1st Division)   No. 1—87—0009

Opinion filed March 20, 1989.

John E. Cunningham, of Chicago, for appellant.

Hurley & Kallick, Ltd., of Chicago (David H. Hight, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

The subject of this appeal is an order entered against the estate of Ramon A. Muscato (Estate) upon a motion for summary judgment filed by Northwest National Bank of Chicago (Bank). The Estate contends that the trial court erroneously determined that there were no genuine issues of material fact which precluded the entry of summary judgment.

According to the record, on December 9, 1983, a petition to probate the will of Ramon A. Muscato was filed in the circuit court of Cook County. Shortly thereafter, the Bank filed a claim against the Estate, alleging that decedent was in default on a business note in the amount of $58,914. The principal loan for $50,000 was made on March 3, 1981, and renewed April 23, 1982. Copies of the original and renewal notes were included in the record. Each copy had been signed thrice by Michael A. Zito and decedent. Their signatures appeared (1) on separate lines adjacent to the word "payee," (2) under the typed statement warrant that the loan would be used for business purposes, and (3) at the foot of the page above the line where their names had been typed.

The Estate filed an answer to the Bank's claim which denied the validity of the note, that the Estate was in default or that decedent had signed as a principal. The answer further averred that decedent had signed as a guarantor and raised the affirmative defense that decedent had been discharged from any obligation on the note be-

cause the Bank had unjustifiably impaired collateral, securing the note in violation of section 3—606 of the Uniform Commercial Code (Ill. Rev. Stat. 1987, ch. 26, par. 3—606). Apparently this contention was based on the fact that on April 23, 1982, the Bank renewed a secured loan in the amount of $97,000 that it had originally made in July 1981 to Michael Zito and three of his relatives. That loan had been secured by an assignment in certain land trusts.

Subsequently, the Bank filed a motion for summary judgment which asserted that the Estate's answer admitted that decedent had signed the note, that decedent had not been identified as a guarantor on the face of the note but as principal obligor on the debt and that there was an outstanding balance due of $63,825. Attached to the motion was a copy of the note.

The Bank also filed a motion to strike the Estate's affirmative defense, which alleged that because no collateral had been pledged as security, the note was unsecured, and the Bank could not be guilty of impairment of collateral.

The Estate filed a reply to the Bank's motion to strike which maintained that section 3—606 provides against the unjustified impairment of collateral and the right of recourse a party may have against another. The Estate also filed an answer to the motion for summary judgment, which maintained that decedent had signed the note as an accommodation or guarantor and not as a principal obligor, that the question of capacity of a signature is one of fact that involves the issue of intent, that there was no proof that decedent had received any of the loan proceeds and that the motion for summary judgment did not include an affidavit setting forth material facts. Thereafter, the Estate's answer to the claim was amended to state that decedent had signed the note as an accommodation party and not as a principal.

Subsequently, in support of the motion for summary judgment, the Bank filed the affidavit of William H. Sperling, a personal financial statement that had been completed by decedent and the two business notes that had been signed by Michael Zito and decedent. Sperling's affidavit averred that he was a vice-president for the Bank, that he had participated in the loan transaction, that decedent had been a customer of the Bank prior to the loan, that the loan was made to Zito and decedent at the request of decedent, that decedent never stated that he was a guarantor or an accommodation party and that decedent had identified the loan as his personal obligation on a financial statement he had given to the Bank. Decedent's personal financial statement listed the note to the Bank as a

personal obligation. Both business notes were in the amount of $50,000, were unsecured and signed by Zito and decedent. One was dated March 3, 1981, and the other was dated April 23, 1982.

Upon considering the pleadings and hearing argument of counsel, the trial court entered an order granting the Bank's motion for summary judgment.

We must now review the Estate's contention that the trial court's order granting summary judgment was erroneous because there were genuine issues of material fact as to whether decedent had signed the note as a maker, and whether decedent had been discharged from an obligation on the note when the Bank, without decedent's consent, extended additional credit to Michael Zito. Summary judgment may be granted where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) A motion for summary judgment asks whether the nonmoving party has presented any evidence to raise a genuine issue of material fact. (*Ralston v. Casanova* (1984), 129 Ill. App. 3d 1050, 1056, 473 N.E.2d 444.) While the nonmoving party is not required to prove his case at this preliminary stage, he is required to present some factual basis which would arguably entitle him to judgment in his favor. (*National Loss Control Service Corp. v. Dotti* (1984), 126 Ill. App. 3d 804, 807-08, 476 N.E.2d 937.) Facts unrelated to the essential elements of the cause of action are immaterial, and no matter how sharply controverted, their presence in the record will not warrant denial of a motion for summary judgment. *Equity General Insurance Co. v. Patis* (1983), 119 Ill. App. 3d 232, 236, 456 N.E.2d 348.

In relevant part, section 3—606 of the Uniform Commercial Code provides:

"(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
***
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse." Ill. Rev. Stat. 1987, ch. 26, par. 3—606(1)(b).

During trial court proceedings, the Estate had maintained that decedent had been discharged from any obligation on the note because he had signed as an accommodation party to the maker, Michael A. Zito. It is well settled that an accommodation party is one who signs in any capacity, including that of a maker, for pur-

poses of lending his name to another generally. (*Godfrey State Bank v. Mundy* (1980), 90 Ill. App. 3d 142, 144, 412 N.E.2d 1131.) Further, the parties' intention is the significant element in determining whether a party is an accommodation maker. (*Holcomb State Bank v. Adamson* (1982), 107 Ill. App. 3d 908, 911, 438 N.E.2d 635.) However, "against a holder in due course," without notice of the accommodation, parol evidence is inadmissible "to give the accommodation party the benefit of discharges dependent on his character as such." (Ill. Rev. Stat. 1987, ch. 26, par. 3—415(3).) Thus, as a matter of law the Estate was precluded from using oral testimony to establish the capacity in which decedent signed the note.

Further, a review of the instant record establishes that decedent's signature appeared in three different locations on the note, *i.e.,* adjacent to the word "payee," under the statement warranting that the loan would be used for business purposes and at the foot of the page above the line where his name had been typed. Each of his signatures was in the place provided for the maker of the note, and there was no indication that decedent had signed in any other capacity. Additionally, decedent claimed the note as a personal obligation on a financial statement he submitted to the Bank. Further, it was uncontested that the loan was made at decedent's request.

■ It is axiomatic that because the loan was unsecured, no collateral could have been impaired. Thus, the Estate's argument that decedent was discharged as a result of the Bank's impairment of collateral in violation of section 3—606 is fatally defective. Moreover, although the Estate on appeal suggests that the decedent signed the note as a surety and was discharged from any obligation on the note when the Bank renewed an unrelated secured loan to Michael Zito and his relatives, the Estate neglected to present this contention before the trial court and may not raise it for consideration on review. (*Harbor Insurance Co. v. Arthur Andersen & Co.* (1986), 149 Ill. App. 3d 235, 240, 500 N.E.2d 707; *Mazikoske v. Firestone Tire & Rubber Co.* (1986), 149 Ill. App. 3d 166, 180, 500 N.E.2d 622.) We also note that the Estate mistakenly relies on *McHenry State Bank v. Y & A Trucking, Inc.* (1983), 117 Ill. App. 3d 629, 454 N.E.2d 345, *Watkins Products, Inc. v. Walter* (1973), 11 Ill. App. 3d 417, 296 N.E.2d 859, and *First Arlington National Bank v. Stathis* (1983), 115 Ill. App. 3d 403, 450 N.E.2d 833, to support this argument. The facts in those cases are distinguishable from those in the cause before this court. *Watkins* involved a separate contract for a private surety. *McHenry* and *First Arlington* involved separate contracts for guarantee. Under the circumstances, the trial court prop-

erly concluded that there are no genuine issues of material fact to preclude summary judgment.

For the reasons stated, the order for summary judgment is affirmed.

Judgment affirmed.

BUCKLEY and O'CONNOR, JJ., concur.