798 P.2d 472

The **FIRST NATIONAL BANK OF NORTH IDAHO, N.A., a national banking association, Plaintiff–Respondent,**

v.

**Thomas F. BURGESS, and if married, Jane Doe Burgess, husband and wife, Defendant–Appellant.**

No. 18001.

Court of Appeals of Idaho.

Sept. 27, 1990.

**628**

Appleton & Phillips, Coeur d'Alene, for defendant-appellant. William Appleton, argued.

Witherspoon, Kelley, Davenport & Toole, Coeur d'Alene, for plaintiff-respondent. Edward J. Anson, argued.

WINMILL, Judge, Pro Tem.

This is an appeal from a decision of the district court granting summary judgment to First National Bank of North Idaho, N.A., in its action to foreclose three mortgages on property owned by the defendant, Thomas F. Burgess. In granting summary judgment, the court rejected Burgess's sole defense that he was discharged from liability on the notes secured by the mortgages because of the Bank's impairment of collateral. Burgess challenges this determination. Burgess also argues that the district court erred in entering a decree of foreclosure, while retaining jurisdiction to determine the fair market value of the prop-

erty and to enter a deficiency judgment should the proceeds from the foreclosure sale be inadequate to pay the full amount due to the Bank. The district court's holding is affirmed for reasons explained below.

The story of Burgess's dealings with First National Bank begins in 1984. In that year, Burgess obtained the first of what would turn out to be three separate loans from First National Bank. Burgess borrowed the money to enable his closely held corporation, Triangle 7, Limited, to purchase a restaurant business in Spokane, Washington.[1] The first loan, totalling $198,008.24, was secured by a second mortgage on Burgess's residence.[2] A second loan, in the amount of $113,500.00, was made the following year. Another mortgage on Burgess's residence was given to secure this loan. In addition, First National Bank acquired a security interest in equipment owned by Triangle 7.

The restaurant did not prosper. In 1985 it closed and was put up for sale. While the sale was pending the corporation continued to operate the restaurant and secured the payment of future rent by giving the landlord of the restaurant a security interest in the restaurant equipment, second in priority behind the Bank, and a fourth mortgage on Burgess's residence.

The third and final loan from the Bank was obtained in connection with the sale of Triangle 7, Limited. Burgess used this loan, which totaled $24,937.50, to bring current the delinquent payments on his earlier loans. As a condition to making the loan, the Bank required that it be secured by a mortgage which would be senior to that given the landlord. To obtain a release of the landlord's mortgage, the Bank released its security interest in the restaurant equipment, thereby giving the landlord a senior position as to that collateral. As part of the loan agreement, Burgess was also re-

---

1. Although the record is not particularly clear on this point, it appears that Burgess used the loan proceeds to capitalize the corporation through a combination of loans to the corporation and the purchase of stock.

2. The first mortgage, held by Federal Land Bank, was relatively small in relation to the value of the residential property, and is of no consequence in this proceeding.

quired to assign to First National Bank; payments due him from the sale of Triangle 7. The purchasers of the corporation failed to make their payments and Burgess's loans went into default soon thereafter.

First National Bank filed a complaint seeking a judgment in the principal sum of $306,922.74, plus interest, and judicial foreclosure of the mortgages. Burgess's only defense in the foreclosure action was that First National Bank, by releasing its security interest in the restaurant equipment, unjustifiably impaired the collateral given as security for the loans. Burgess argued that this should excuse his obligations to First National Bank. The Bank filed a motion for summary judgment which was granted by the district court. The court, in entering its decree of foreclosure, did not determine the fair market value of the foreclosed property. However, the court retained jurisdiction to establish the value of the property and to consider whether a deficiency judgment should be entered if the money from the sale was insufficient to pay the amount due to the Bank. Burgess appeals this decision.

Burgess has raised two issues on appeal. First, he claims the court erred in granting summary judgment to the Bank and determining that he could not assert a defense of impairment of collateral. Second, Burgess argues that the entry of a foreclosure decree, which left open the possibility of a deficiency judgment, was improper because it was made without a valuation of the property involved. Each issue will be considered in turn.

■ We first consider Burgess's argument that the district court erred in not allowing him to go forward with his impairment of collateral defense. Although raised in the context of a motion for summary judgment, the issue before the court involved a question of statutory construction. Since the decision below involved a question of law, we exercise free review on appeal. *Aldape v. Akins,* 105 Idaho 254, 668 P.2d 130 (Ct.App.1983) (review denied).

The impairment of collateral defense is found in the following language of I.C. § 28–3–606:

> The holder [of any instrument] discharges any party to the instrument to the extent that without such party's consent the holder ·... unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.

I.C. § 28–3–606(1)(b). Burgess argues that the Bank, in releasing its security interest in the restaurant equipment, impaired its collateral so as to trigger his discharge under I.C. § 28–3–606. Without considering whether Burgess gave his consent to the release of the Bank's security,[3] the district court concluded that Burgess was the sole maker of the promissory note and that the impairment of collateral defense was not available to him, as a matter of law. We agree with the lower court's determination.

■ Although I.C. § 28–3–606 appears to extend the collateral impairment defense to "any party" to the note, the vast majority of state and federal courts hold that this is limited to "any party who is in the position of a surety, having a right of recourse" and does not include a maker of a note. *See Great Southwest Life Ins. Co. v. Frazier,* 860 F.2d 896 (9th Cir.1988) (adopting Idaho's statute as the federal rule); *FDIC v. Blue Rock Shopping Center,* 766 F.2d 744 (3d Cir.1985); *United States v. Unum,* 658 F.2d 300 (5th Cir.1981); *Estate of Muscato v. Northwest Nat. Bank,* 181

---

**3.** The record seems clear that Burgess consented to the Bank's release of its security interest in the restaurant equipment. This was evidenced by correspondence between the parties and the terms of Burgess's agreement with the purchaser of the restaurant. Burgess's consent is critical, since, as Professors White and Summers note, "the surety is also discharged when, *without his consent,* the creditor 'unjustifiably impairs any collateral for the instrument.'" 1 J. White & R. Summers, Uniform Commercial Code, § 13–15, at 666 (3d ed. 1988) (emphasis added). However, the district court chose not to rely upon the issue of consent in granting the Bank's motion for summary judgment and, in view of our holding, we find it unnecessary to consider the issue here.

Ill.App.3d 44, 129 Ill.Dec. 822, 536 N.E.2d 872 (1 Dist.1989); *Federal Land Bank of Louisville v. Taggart,* 31 Ohio St.3d 8, 508 N.E.2d 152 (1987); *Madill Bank and Trust Co. v. Herrmann,* 738 P.2d 567 (Okl.App. 1987); *El–Ce Storms Trust v. Svetahor,* 223 Mont. 113, 724 P.2d 704 (1986). Support for this position is found in the Official Comment to I.C. § 28–3–606, which states that:

> The words "any party to the instrument" remove an uncertainty arising under the original section. *The suretyship defenses here provided* are not limited to parties who are "secondarily liable," but *are available to any party who is in the position of a surety,* having a right of recourse either on the instrument or dehors it, including an accommodation maker or acceptor known to the holder to be so. (Emphasis supplied).

Idaho Code § 28–3–606, Comment to Official Text.

We find this interpretation of the statute to be consistent with the public policy underlying the impairment defense. As stated in *United States v. Unum, Inc., supra,*

> This interpretation of 3–606 is soundly based. The maker of a note is always primarily responsible for the debt with no recourse except against co-makers. Sureties, whether accommodation makers or endorsers, are only secondarily liable; they retain a right of recourse against the primary obligor. Fairness dictates that if the risk a surety has agreed to undertake is increased through impairment of the securing collateral by the person to whom payment is due, the surety should be discharged to the extent of the impairment.

658 F.2d at 304–305 (citations omitted). While accepting the majority view that the impairment of collateral defense is not available to a maker who has primary liability under a promissory note, we are aware that the defense has generally been extended to co-makers who have executed the note as an accommodation party. Consideration must therefore be given to whether Burgess may be considered as an accommodation maker.

The Code defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." I.C. § 28–3–415(1). Thus, a maker becomes an accommodation maker if he or she signed the note to accommodate the primary obligor, and is in the position of a surety, having a right of recourse against the maker. *FDIC v. Blue Rock Shopping Center, Inc., supra,* 766 F.2d at 749. Here, Burgess argues that he signed the promissory notes as an accommodation to his corporation. However, nothing in the record supports this claim.

Burgess was the only party who signed the promissory notes as an obligor and the name of Triangle 7 does not appear on the face of the notes. Since "[n]o person is liable on an instrument unless his signature appears thereon," I.C. § 28–3–401(1), it is clear that Triangle 7 was not the principal obligor, or even "another party" to the notes. It necessarily follows that Burgess did not sign the notes as an accommodation to Triangle 7, but executed the instruments as the principal obligor. *See Estate of Muscato v. Northwest Nat. Bank,* 181 Ill.App.3d 44, 129 Ill.Dec. 822, 536 N.E.2d 872 (1 Dist.1989); *Commerce National Bank in Lake Worth v. Baron,* 336 F.Supp. 1125 (E.D.Pa.1971). We therefore uphold the district court's decision that the impairment of collateral defense was not available to Burgess and we affirm the summary judgment to the Bank.

We next turn to Burgess's contention that the district court erred in retaining jurisdiction to determine the fair market value of the mortgaged property and, if necessary, to issue a deficiency judgment. Burgess argues that the court's action conflicted with the following language of I.C. § 6–108:

> No court ... shall have jurisdiction to enter a deficiency judgment in any case involving a foreclosure of a mortgage on real property in any amount greater than the difference between the mortgage indebtedness, as determined by the decree, plus costs of foreclosure and sale, and

the reasonable value of the mortgaged property, to be determined by the court in the decree upon the taking of evidence of such value.

The statute "requires determination of the fair market value of the mortgage property before a deficiency judgment can be awarded," *Eastern Idaho Production Credit Assoc. v. Placerton, Inc.,* 100 Idaho 863, 870, 606 P.2d 967, 974 (1980), and has been construed to require that the valuation should be that as it existed at the time of the entry of the original decree. *Id.,* at 871, n. 4, 606 P.2d at 975, n. 4. However, nothing in the statute forbids the procedure utilized in this case by the district court. By retaining jurisdiction, the court reserved the right to take evidence on valuation at a later date and, if necessary, to amend the decree of foreclosure to include a determination of value, established as of the date of the original decree. Nothing about this procedure would appear to violate Burgess's right under the statute. Accordingly, we reject his contention that the district court erred in retaining jurisdiction to make a subsequent determination of value.

■ Finally, we consider the issue of attorney fees. Each of the promissory notes signed by Burgess provides for an award of reasonable attorney fees and costs incurred in any action brought to collect on the debt. Therefore an award of attorney fees to First National Bank is warranted. *See, e.g., Farber v. Howell,* 111 Idaho 132, 721 P.2d 731 (Ct.App.1986).

The judgment of the district court is affirmed. Attorney fees and costs on appeal to respondent, First National Bank of North Idaho, N.A., in amounts to be determined under I.A.R. 40 and 41.

WALTERS, C.J., and SWANSTROM, J., concur.