ADA P. KAHN, Claimant-Appellant, v. THE FIRST NATIONAL BANK OF CHICAGO, Ex'r of the Estate of William Carmel, Deceased, Executor-Appellee.

First District (1st Division)   No. 1—89—3530

Opinion filed June 28, 1991.

Barnett, Bornstein & Blazer, Ltd., of Chicago (Harvey J. Barnett and Lori D. Isaacs, of counsel), for appellant.

James E. Dahl & Associates, of Chicago (Walter P. Dahl, of counsel), for appellee.

PRESIDING JUSTICE MANNING delivered the opinion of the court:

Claimant, Ada P. Kahn (hereinafter claimant), appeals from an order of the circuit court granting summary judgment on behalf of The First National Bank of Chicago (hereinafter First National or the executor), the executor of the estate of the decedent William Carmel (hereinafter decedent). On November 25, 1985, the decedent executed a will, which, among other things, left the residue of his estate to be distributed to First National, as trustee, under a trust agreement that he also executed on that date. The trust agreement, in relevant part, provides that "[t]he balance of the Trust Estate after making the foregoing distributions shall be divided by the Trustees into as many equal shares as shall be required to distribute to the following persons who survive the number of shares set forth after their names, and the Trustee shall distribute such shares to such persons." The trust agreement provided that claimant was entitled to one share. However, pursuant to his power to modify the trust agreement, the decedent executed three amendments: (1) On December 9, 1985, claimant's one share was increased to two shares; (2) on February 7, 1986, claimant's shares were increased to four; and (3) on December 10, 1986, claimant's shares were reduced from four shares to one share.

Claimant filed an amended claim against the estate for breach of a purported oral contract alleging that she agreed to furnish certain services to the decedent, her uncle, during his lifetime, and so performed, in exchange for decedent's agreement to make substantial provisions for claimant from his post-death assets. The amended claim alleges, *inter alia*, that commencing in 1983, decedent, unmarried and living alone, suffered from failing health; that claimant was an author and consultant in health care; that decedent orally promised to make substantial provisions for claimant; and that she agreed to provide services for the decedent, which included financial and administrative advice, personal counselling work and acting as his chauffeur. Claimant contended that she was entitled to four shares of the trust estate as provided for in the second amendment to the trust agreement.

The executor filed its answer and served claimant with interrogatories requesting information concerning the (1) date, location and persons present on the occasions in which decedent made oral promises to claimant and (2) the substance of any alleged conversations. In the answers to the interrogatories, claimant set forth facts relating to her conversations with decedent in which she stated that the two of them were present. At this time, claimant did not mention the presence of anyone else when she spoke to the decedent or that anyone else had knowledge of the alleged agreement between the parties.

Thereafter, the executor filed a two-paragraph motion for summary judgment contending that because claimant was not a competent witness pursuant to the Dead Man's Act (Ill. Rev. Stat. 1987, ch. 110, par. 8—201), no factual basis existed to support her claim. Claimant then filed the affidavits of her daughter, Ruth Kahn, an out-of-State attorney, and her nephew, Jack Paskind, in opposition to the summary judgment motion. The affidavits set forth conversations between the affiants and decedent in which the decedent promised to compensate claimant for services rendered. For instance, Ms. Ruth Kahn's affidavit stated that while she was in Chicago in August 1988 and visited Bill (decedent) at the home in Evanston, she inquired if "mother was still taking good care of you." The affidavit stated that "Bill said (paraphrased) 'Sure she is; that's the deal; you know, she's to take care of me while I'm alive and I'll take care of her when I die; she does more than anyone else in the family for me.' He told me (paraphrased) 'Like I said, I have provided four shares for her.' " Mr. Paskind's affidavit, in part, stated that when he and his wife visited Chicago in May 1988, he saw Bill at the nursing home in Evanston at which time he said to his uncle (paraphrased) "You're lucky to have Ada helping you." Bill said (paraphrased) "I've got an arrangement with Ada—she'll get a large part of my estate."

The executor filed no response, affidavits, memoranda, or further pleadings in support of its motion for summary judgment. Following the hearing on the motion, the trial court granted judgment in favor of the executor and dismissed the claim.

Claimant maintains that the trial court erred in granting judgment in favor of the executor because the executor either abandoned or waived its argument pursuant to the Dead Man's Act during the hearing on the motion when executor's counsel proceeded upon a different and contradictory theory and claimant's counsel was not afforded an opportunity to respond. Claimant also asserts that summary judgment is improper because the documents before the trial court es-

tablished allegations of material fact as to the existence of a contract between the claimant and decedent.

In its written motion for summary judgment, the executor alleged that claimant herself would be barred from testimony as to any conversations with the decedent pursuant to the Dead Man's Act. The Act provides in pertinent part:

"In the trial of any action in which any party sues or defends as the representative of a deceased person ***, no adverse party or person directly interested in the action shall be allowed to testify on his or her own behalf to any conversation with the deceased *** or to any event which took place in the presence of the deceased ***." Ill. Rev. Stat. 1985, ch. 110, par. 8—201.

Our review of the record below reveals that the executor's position remained the same at all times before the trial court. It conceded that the affidavits of Ruth Kahn and Jack Paskind, and thus their testimony, would not be precluded by the Act. (*In re Estate of Shanahan* (1978), 59 Ill. App. 3d 269, 272, 375 N.E.2d 508.) However, the executor maintains that summary judgment was proper here notwithstanding the affidavits or the applicability of the Act because there was no evidence of a specific and definite agreement between the decedent and the claimant to be specifically enforced as a matter of law. We agree.

■ A summary judgment is considered a drastic remedy and is to be awarded and reviewed with care and caution. (*Bloomer Amusement Co. v. Eskenazi* (1979), 75 Ill. App. 3d 117, 394 N.E.2d 16.) However, summary judgment procedure is encouraged because it promotes efficient and economical use of the judicial system. (*Manahan v. Daily News-Tribune* (1977), 50 Ill. App. 3d 9, 365 N.E.2d 1045.) Summary judgment is proper where the pleadings, depositions and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005(c)) and that the moving party is entitled to a judgment as a matter of law. (*Kroll v. Sugar Supply Corp.* (1983), 116 Ill. App. 3d 969, 452 N.E.2d 649.) The trial court must construe all pleadings and affidavits most strictly against the moving party (*Bard v. Harvey* (1979), 74 Ill. App. 3d 16, 392 N.E.2d 371), and the record to be considered includes answers to interrogatories (*Washington v. Draper & Kramer, Inc.* (1973), 11 Ill. App. 3d 952, 298 N.E.2d 270).

In the present case, claimant urges that the contract may be proved by declarations and conduct of the parties (*Skurat v. Kellerman* (1977), 53 Ill. App. 3d 361, 368 N.E.2d 966), *i.e.*, the decedent

initially complied with his part of the agreement to compensate the claimant when he provided four shares for her in the second amendment to the trust agreement. She contends that the only question of fact to be determined by the trier of fact is whether this manifestation was in consideration of the promises the decedent made and the services claimant performed. In a case dispositive of this issue, our court held that "summary judgment procedure utilized in the case at bar is not designed to infringe upon the role of the fact-finder by determining an issue of fact, but rather to ascertain whether such an issue exists based on the record." (*Alexander v. Standard Oil Co.* (1981), 97 Ill. App. 3d 809, 814, 423 N.E.2d 508.) Furthermore, whether there is any question to present to the trier of fact is, in the first instance, a question of law to be determined by the court. *Alexander*, 97 Ill. App. 3d 809, 423 N.E.2d 508.

The function of the reviewing court upon the trial court's grant of summary judgment is to consider whether the trial court properly ruled that no genuine issue of material fact had been raised and whether entry of judgment was correct as a matter of law. (*In re Estate of Spaulding* (1989), 187 Ill. App. 3d 1031, 1035, 543 N.E.2d 980.) The present case is similar to those in which one seeks specific performance to enforce an oral contract to will or devise property, in consideration of services to be rendered. It is well settled that the cases allowing specific performance are those in which a gross fraud would be suffered by the promisee if specific performance were denied. In any event, the terms of a contract must be reasonably certain. Although some terms may be missing or left to be agreed upon, if the essential term or terms are so uncertain that there is no basis for deciding whether the agreement has been kept or broken, there is no contract. Restatement (Second) of Contracts §33 (1981); *Champaign National Bank v. Landers Seed Co.* (1988), 165 Ill. App. 3d 1090, 1093, 519 N.E.2d 957.

Our courts have held that in a suit for specific performance of a contract to make a will, the evidence of the existence of the contract and its terms must be clear and explicit and "so convincing that it will leave no doubt in the mind of the court." (*Greenwood v. Commercial National Bank* (1955), 7 Ill. 2d 436, 440, 130 N.E.2d 753.) Although a contract may be based upon "services, support and care," as here, evidence of such acts does not necessarily provide sufficient proof that a contract existed (*Greenwood*, 7 Ill. 2d at 440), and mere statements by the deceased of his intention to make a will or devise property are not sufficient proof to warrant the inference that a contract of any kind was made. *Greenwood*, 7 Ill. 2d at 441.

In *Linder v. Potier* (1951), 409 Ill. 407, 411, 100 N.E.2d 602, our supreme court stated: (1) courts of equity accept with caution evidence offered in support of a contract to make disposition of the property of a deceased person different from that provided by law; (2) the contract to support it must be clear, explicit and convincing; (3) the contract may be based upon services, support and care; (4) specific performance rests in the sound discretion of the trial court; and (5) it is only on the principle that it is unjust and inequitable to permit a contract to remain unexecuted that a court of equity will grant relief. Moreover, as the burden of proof is upon the party seeking to establish the contract, we agree with the trial court here that the record is devoid of evidence of the meeting of the minds of the parties. The evidence before the trial court was insufficient to demonstrate that decedent entered into a contract at a specific point in time with the claimant to provide her with four shares of his *inter vivos* trust. The record in the present case reveals no specific acts, conduct or circumstances which permit us to infer a promissory expression or intent to be bound. As there is no evidence of a mutual understanding between the parties or the implied terms of the alleged agreement, there was no contract implied in fact. (*In re Estate of Milborn* (1984), 122 Ill. App. 3d 688, 690, 461 N.E.2d 1075.) Thus, we believe that, based upon the record, it was not unreasonable for the trial court to agree with the executor's argument and implicitly find that there was no genuine issue regarding the existence of an alleged oral agreement enforceable as a matter of law. See *La Salle National Bank v. Vega* (1988), 167 Ill. App. 3d 154, 520 N.E.2d 1129.

■ As previously stated, we have reviewed the record here. At best, the record suggests that the decedent on several occasions made statements of testamentary intent, but never made a specific contract capable of enforcement. (See *In re Estate of Spaulding* (1989), 187 Ill. App. 3d 1031, 543 N.E.2d 980.) It was left to the decedent's discretion, the manner in which and extent to which he would make provisions for claimant upon his death. Decedent left the claimant one share of his trust estate estimated at $1,500,000 and all of his personal property. Although we agree that the claimant is not required to prove her claim at the summary judgment stage, a claimant must present some factual basis which would entitle her to a judgment under the applicable law. (See *National Loss Control Service Corp. v. Dotti* (1984), 126 Ill. App. 3d 804, 807-08, 476 N.E.2d 937; *Conrad v. Christ Community Hospital* (1979), 77 Ill. App. 3d 337, 395 N.E.2d 1158.) In applying the aforementioned principles of law to claimant's alleged facts in this case, we conclude that claimant failed to meet the

burden imposed upon her at the summary judgment hearing and did not present sufficient evidence to raise a genuine issue of material fact. *Estate of Muscato v. Northwest National Bank* (1989), 181 Ill. App. 3d 44, 47-49, 536 N.E.2d 872.

■■ ■ Additionally, in the instant case, we have a situation where decedent executed an *inter vivos* trust[1] with a pour-over trust provision[2] in his will. A settlor can modify or revoke a trust at any time where he has reserved the power to do so in the trust agreement. (*Williams v. Springfield Marine Bank* (1985), 131 Ill. App. 3d 417, 475 N.E.2d 1122.) Furthermore, a property owner has an absolute right to dispose of his property during his lifetime in any manner he sees fit. (*In re Estate of Nemecek* (1980), 85 Ill. App. 3d 881, 407 N.E.2d 655.) It has been held that a will disposing of property out of harmony and inconsistent with an oral contract is a circumstance to be considered as bearing upon the improbability that such a will would have been made while under the obligations of a contract. (*In re Estate of Konow* (1987), 154 Ill. App. 3d 744, 753, 506 N.E.2d 450, relying on *Anson v. Haywood* (1947), 397 Ill. 370, 74 N.E.2d 489.) Similarly, we believe that where a trust agreement disposes of property out of harmony and inconsistent with a purported oral contract, as here, such a circumstance is to be considered as bearing upon the improbability that such a trust agreement or amendments to the trust agreement would have been made while under the obligations of a contract. As claimant was unable to present a factual basis which would entitle her to judgment under applicable law, we affirm the order of the summary judgment.

Affirmed.

CAMPBELL and O'CONNOR, JJ., concur.

---

[1]An *inter vivos* trust is defined as a transfer of property during the lifetime of the settlor and to become effective in his lifetime as contrasted with a testamentary trust, which takes effect at the death of the settlor.

[2]A pour-over trust is defined as a provision in a will in which the testator leaves the residue of his estate to a trustee of a living trust for purpose of that pour-over trust.