See also *Riley v. Rowan*, 131 Idaho 831, 965 P.2d 191 (1998).

72 P.3d 889

**Catherine ROWAN, Plaintiff–Respondent,**

**v.**

**Norman RILEY and Robin Riley, husband and wife, Defendants–Appellants.**

**No. 26172.**

Supreme Court of Idaho, Boise, April 2003, Term.

June 19, 2003.

Anderson, Nelson, Hall, Smith, Idaho Falls, for appellants. Steven R. Parry argued.

Rigby, Thatcher, Andrus, Rigby, Kam & Moeller, Chtd., Rexburg, for respondent. Gregory W. Moeller argued.

TROUT, Chief Justice.

This is the second appeal arising from a declaratory judgment action between family members regarding ownership of and responsibility for a water right, a well and certain well equipment, a loan secured by a mortgage, and an easement, all pertaining to the now divided family farm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts involved in this decision include those described in *Riley v. Rowan*, 131 Idaho 831, 965 P.2d 191 (1998). In 1944, Lucille Howe was deeded a life estate in 756.5 acres of farm land. Lucille Howe's two children, Respondent Catherine Rowan (Rowan) and James Howe (Jim Howe), received remainder interests in this same property. For a number of years, Jim Howe leased and farmed the entire property.

While leasing and farming the land on behalf of his sister and mother, Jim Howe made various improvements to the property. These improvements included the construction of two wells, one on the northern section of the farm and the other on the southern section. In addition, Jim Howe applied for two water permits and entered an agreement with Oregon Short Line Railroad Company and Union Pacific Railway Company. This agreement allowed Jim Howe to construct, operate and maintain a 14–inch irrigation pipeline under railroad tracks bisecting the southern portion of the property.

In this same general time frame, Jim Howe also obtained a bank loan from the Federal Land Bank (FLB), secured by a mortgage on the northern half of the farm property. Lucille Howe, Jim Howe, and Rowan each signed the note and loan agreement, but Rowan testified that she did so as an accommodation to her brother who was experiencing personal financial difficulties. Rowan testified she did not receive any benefit from the loan.

In 1983, Lucille Howe died and the farm land passed to Jim Howe and Rowan as tenants in common in fee simple absolute. After Lucille's death, the parties held the entire property as tenants in common for approximately five years. During this time, Jim Howe continued to operate the farm and leased Rowan's portion of the land. Also during this time, Jim Howe continued to have personal financial difficulties requiring him to take out additional loans. Rowan objected to the further encumbering of her undivided half-interest in the property and, in 1988, the parties decided to partition the property through a series of deeds and correction deeds. Ultimately, Jim Howe was deeded the northern half of the property with all appurtenances and Rowan was deeded the southern half of the property with all appurtenances. After the partition, Jim Howe continued to farm his northern half of the land and Rowan's southern half under a lease agreement.

In 1991, shortly before his death, Jim Howe executed a bill of sale to Appellants, his daughter Robin Riley and her husband Norman Riley (the Rileys). This bill of sale purports to convey to the Rileys certain property, including well equipment located on Rowan's portion of the land.

In 1992, Jim Howe died. Pursuant to a provision of his will, the Rileys exercised an option and executed a purchase agreement purchasing Jim Howe's interests in the farm land and other farm assets from Robin Riley's two sisters.

In 1993, the Rileys entered an agreement with Union Pacific Railway Company. Under this agreement, the Rileys were effectively substituted for Jim Howe in the 1981 agreement.

Sometime after Jim Howe's death, Rowan became concerned about certain actions taken by the Rileys. As a result, Rowan initiated the instant litigation petitioning the Court to determine the parties' rights and obligations relating to (1) ownership of a water right; (2) ownership of a well and certain well equipment; (3) responsibility for certain debt; and (4) ownership of an easement. The district court determined it was without subject matter jurisdiction to hear any water law issues. Subsequently, the Rileys filed a declaratory judgment action in the Snake River Basin Adjudication (SRBA) regarding ownership of the water right, resulting in a decision from the SRBA court. That decision, affirmed by the Supreme Court, awarded both Rowan and the Rileys a one-half interest in the water right. *See Riley*, 131 Idaho 831, 965 P.2d 191.

After the SRBA decided the water rights issues in this case, the district court began proceedings to determine the remaining is-

sues. After a three-day trial, the district judge determined first, with regard to the FLB debt, the Rileys have full responsibility for the FLB note and mortgage and Rowan is only secondarily liable on the note. Further, the Rileys do not have a claim of equitable subrogation against Rowan. Second, with regard to the well and well equipment, the well and well casings belong to Rowan, the mainline supplying water to the Rileys is owned equally by Rowan and the Rileys, and the pump at the well belongs exclusively to the Rileys. Finally, with regard to the easement, the district judge determined it is appurtenant to and runs with the Rowan property. Therefore, Rowan has complete control over the easement and the Rileys have no rights in it. The Rileys appeal.

## II.

## STANDARD OF REVIEW

■ This Court must defer to the district court's findings of fact to the extent they are supported by substantial evidence but will freely review the district court's conclusions of law. *Riley*, 131 Idaho at 833, 965 P.2d at 193.

## III.

## DISCUSSION

**A. The district judge did not err in denying the Rileys equitable subrogation against Rowan.**

The district judge determined Rowan is an accommodation party, only secondarily liable on the FLB note; therefore, the Rileys have no right of recourse or equitable subrogation against Rowan. The Rileys argue the district judge's denial of their equitable subrogation claim is in error for two reasons: (1) Rowan is not an accommodation party under the statute and (2) even if Rowan is correctly deemed an accommodation party, equitable subrogation provides an independent, non-statutory remedy that operates outside the confines of the U.C.C. Neither argument is ultimately persuasive.

*1. The district judge correctly determined Rowan was an accommodation party on the promissory note pursuant to I.C. § 28-3-415(1).*

■ The district judge determined Rowan was an accommodation party, because it was clear that her intent in signing the FLB note was to obtain funds for Jim Howe and not to become a co-obligor on the note. The Rileys claim the district judge's conclusion is in error, because he considered inadmissible evidence and, even if such evidence were admissible, it does not support the judge's conclusion.

■ The district judge determined the applicable statute is Article 3 of the Idaho Uniform Commercial Code (U.C.C.) as it existed at the time the FLB note was signed in 1979. At that time, the U.C.C. provided, "An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." I.C. § 28-3-415(1)(1967). A party signing a promissory note "becomes an accommodation maker if he or she signed the note to accommodate the primary obligor, and is in the position of a surety, having a right of recourse against the maker." *First Nat. Bank of North Idaho, N.A. v. Burgess*, 118 Idaho 627, 630, 798 P.2d 472, 475 (Ct.App.1990).

■ The question as to whether a party is an accommodation party depends on the signer's purpose in signing, and the question of purpose or intent is a factual question to be resolved by the trier of fact. *Airstream, Inc. v. CIT Fin. Servs., Inc.*, 111 Idaho 307, 723 P.2d 851 (1986). "In making this determination, courts are often guided by whether the co-signer received consideration in exchange for his signature. Courts focus on this aspect of the transaction, because the receipt of proceeds from the instrument or other direct benefits would generally be inconsistent with the accommodation status." *Kaufman v. Fairchild*, 119 Idaho 859, 861, 810 P.2d 1145, 1147 (Ct.App.1991).

The Rileys argue the district court applied the correct legal standard but erred by considering certain testimony that should have been excluded under the dead man's statute, the hearsay rule, and the parol evidence rule.

Further, they argue that even if such evidence were admissible, the evidence does not support the district court's conclusions.

■ Admission of testimony by a trial court is reviewed for abuse of discretion. *Lunders v. Snyder,* 131 Idaho 689, 699, 963 P.2d 372, 382 (1998). In general, a trial court does not abuse this discretion so long as it recognizes the issue as one of discretion; acts within the outer limits of its discretion and consistently with the legal standards applicable to the available choices, and reaches its decision through an exercise of reason. *Sun Valley Shopping Ctr. v. Idaho Power,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

■ The dead man's statute provides the following:

> Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of the deceased person as to any communication or agreement, not in writing, occurring before the death of such deceased person.

I.C. § 9–202(3); Idaho Rule of Evidence 601(b). The dead man's statute does not apply where, as here, the action is not against the executor or administrator of an estate and the claim does not represent a demand against the estate.

■ Under the parol evidence rule, if the written agreement is complete on its face and unambiguous, extrinsic evidence of prior or contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract. *Lindberg v. Roseth,* 137 Idaho 222, 228, 46 P.3d 518, 524 (2002). Further, if the language of the contract is plain and unambiguous, the intention of the parties must be determined from the contract itself. *Simons v. Simons,* 134 Idaho 824, 827, 11 P.3d 20, 23 (2000). The parol evidence rule does not apply here, due to the specific terms of the prior version of Article 3 of the U.C.C.

In 1979, Article 3 of the U.C.C. expressly provided for the admission of oral testimony relating to the intent of a party in signing a document as an accommodation. The statute provided, "the accommodation character may be shown by oral proof." I.C. § 28–3–415(3) (1967). Thus, the specific provision found in the former U.C.C. Article 3 provision controls over the more general provisions of the parol evidence rule, and permits oral testimony regarding the signer's intent.

Under the hearsay rule, "[h]earsay is not admissible except as provided by [the Idaho Rules of Evidence] or other rules promulgated by the Idaho Supreme Court." I.R.E. 802. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." I.R.E. 801.

■ The hearsay rule does not apply to testimony Rowan offered regarding statements made by her mother, because Rowan did not offer the above evidence to prove the truth of the matter asserted, specifically that Jim Howe needed Rowan to sign the FLB note in order to obtain operating funds. Rather, the testimony was provided for the purpose of proving Rowan's state of mind at the time she signed the documents. At this time, she was under the impression that her brother needed her to sign the loan documents in order to obtain necessary financing, and she was under this impression due to statements by her mother, whether or not such statements were actually true. Therefore, the district judge was permitted to consider such evidence.

In sum, the Rileys failed to show the district judge considered inadmissible evidence in making certain findings regarding Rowan's intent in signing the FLB note and mortgage. Moreover, the district judge's findings support his ultimate conclusion that Rowan is an accommodation party under the U.C.C. In support of this conclusion, the district judge determined Rowan did not make any payments on the FLB note and was never asked to until the present litigation was filed; there was no evidence that Rowan received anything meaningful or of value for signing the FLB note; and, although the Rileys claimed Rowan made payments on the debt through a decrease in lease payments, there is nothing in the leases or anything else to demonstrate the rent was

reduced to reflect debt payments. These findings are supported by sufficient evidence and adequately support the trial court's conclusion that Rowan was an accommodation party under the U.C.C.

*2. Because Rowan is an accommodation party, the district judge correctly determined she is not the proper subject of equitable subrogation.*

■ Based on Rowan's status as an accommodation party under the U.C.C., the district judge determined that the Rileys have no right of recourse against Rowan, because equitable subrogation is not recognized by the U.C.C. and the U.C.C. controls whatever subrogation rights there are under the circumstances. The Rileys argue the district judge erred, because equitable subrogation provides an independent, non-statutory remedy.

Article 3 of the U.C.C. as it existed prior to Jim Howe's death, provided a statutory right of subrogation: "An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party." I.C. § 28–3–415(5)(1967). This language clearly prohibits the accommodated party from seeking subrogation from the accommodation party. Therefore, the district judge correctly determined that the Rileys, as the accommodated party, cannot seek subrogation from Rowan, the accommodation party.

**B. The district judge did not err in determining the ownership interests in the well equipment.**

■ The district judge determined the well and well casings are a fixture appurtenant to the southern property and owned exclusively by Rowan; the mainline supplying water to the Rileys is owned equally by Rowan and the Rileys; and the pump at the well, installed by Jim Howe after the partition of the property, belongs exclusively to the Rileys. The district judge based this determination primarily on the partition of the property. When the property was partitioned, the deeds to the real property included all fixtures and appurtenances. Thus, the northern portion of the property deeded to

Jim Howe included the mortgage and northern well and the southern property deeded to Rowan included the southern well.

The Rileys argue the district judge erred by failing to apply the following test:

[I]n determining whether a particular article has become a trade fixture, three general tests are to be applied: (1) annexation to the realty, either actual or constructive; (2) adaptation and application to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) intention to make the article a permanent accession to the freehold.

*Rayl v. Shull Enterprises, Inc.*, 108 Idaho 524, 537, 700 P.2d 567, 570 (1984) (quoting *Pearson v. Harper*, 87 Idaho 245, 256, 392 P.2d 687, 693 (1964)). Applying this legal test to the facts, the Rileys argue the well equipment is not a fixture.

■ The Rileys are correct in that the district judge failed to apply the correct legal standard for determining what is a fixture; however, in applying the correct legal standard, this Court concludes the well and well equipment are a fixture as a matter of law. "Normally, the determination of what is a fixture is a mixed question of law and fact .... However, application of the three-part test becomes a pure question of law when only one reasonable conclusion maybe drawn from the evidence." *Rayl v. Shull Enterprises, Inc.*, 108 Idaho at 527, 700 P.2d at 570. Here, the record leads to only one reasonable conclusion: the well equipment is a fixture.

■ First, the well was annexed to the real property. Annexation is considered in light of the relationship of the object to the real property. *Id.* Annexation can be actual or constructive. *Id.* "[C]onstructive annexation may be found where objects, although not themselves attached to the realty, comprise a necessary, integral or working part of some other object which is attached." *Id.* at 528, 700 P.2d at 571. As demonstrated at trial, a well is basically a hole in the ground with certain equipment, including the casing, bowls, column, shafting and motors. While there was testimony indicating that some of these components can be removed with vary-

ing levels of difficulty, the well is best understood as annexed to the property. The hole in the ground cannot be removed, and the other equipment is all necessary and integral to make the hole a working well.

Second, the findings of the district judge support a conclusion that the well is adapted and applied to the use or purpose to which that part of the realty is appropriated. The real property at issue has been devoted to use as a farm. The well makes the farm more valuable by providing necessary water.

■ Third, the southern well was intended to be a permanent accession to the freehold estate. "The intention sought is not the undisclosed purpose of the annexor, but rather the intention implied and manifested by his act." *Id.* The district judge determined in the findings of fact that the wells, pumps, motors, and buried mainlines were permanent. Further, from a common sense standpoint, it is hard to imagine why someone would bury mainline two feet deep and dig a 1,169 foot well for a temporary purpose. In undergoing such efforts and expense, Jim Howe must have intended the well to be used on the property into the indefinite future. Moreover, Jim Howe was acting as farm manager of the entire farm property at the time the well was constructed, between 1979 and 1981. Given the Court's decision in the Rileys first appeal, it appears Jim Howe's efforts as farm manager were primarily for the benefit of all three farm owners, Lucille Howe, Jim Howe, and Rowan. Thus, it makes sense that he intended the southern well to be considered a permanent fixture for the benefit of all of the property owners. Further, there was evidence in the record suggesting the farm property, even prior to partition, was treated as two separate parcels. Accordingly, it is reasonable to conclude the owners intended the southern well to serve the southern portion of the property and the northern well the northern portion of property.

For the above reasons, although the district judge did not apply the correct three-factor test to determine whether the well was a fixture, it is reasonable for this Court to conclude, as a matter of law, that the well is a fixture permanently attached to the south-

ern portion of the farm property. Thus, the district judge correctly determined the well and well equipment, except for the pump installed after the partition, belong to Rowan.

## C. The district judge did not err in holding the agreement with the railroad is exclusively for Rowan's benefit.

The district judge determined Rowan owned the rights to the railroad property, because the railroad property is an easement, appurtenant to and running with Rowan's property. The district judge concluded the railroad agreement, like the water rights, were acquired by Jim Howe when he was acting as farm manager. Therefore, the rights created by the agreement should have come to Rowan after Lucille's death and upon partition of the real property.

■ The Rileys argue the district judge erred, because the rights to the railroad property do not constitute an easement at all, but are a license. Licenses, unlike easements, are personal property and are not appurtenant to the land. Further, because the rights to the railroad property are personal to Jim Howe, Rowan has no property interest in the railroad property.

■ This Court determines the agreement creates a license to use the railroad property. While it is often difficult to determine the difference between an easement and a license, they are distinct in principle. An easement is the right to use the land of another for a specific purpose that is not inconsistent with the general use of the property by the owner. *Abbott v. Nampa School Dist. No. 131,* 119 Idaho 544, 548, 808 P.2d 1289, 1293 (1991). In contrast to an easement, "[a] license is a permissive use of land by which the owner allows another to come onto his land for a specific purpose." 25 Am Jur 2d *Easements and Licenses* § 2 (1996). In addition, a license does not pass with the title to the property but is only binding between the parties expiring upon the death of either party. *State v. Camp,* 134 Idaho 662, 667, 8 P.3d 657, 662 (Ct.App.2000). In determining whether an agreement constitutes a license or an easement, the title of the instrument is not controlling. Rather, the charac-

ter of the interest created "depends upon the intent of the parties as interpreted from the language used and to the extent the rules of evidence permit from the surrounding circumstances, viewed in the light of applicable law." *Cooper v. Boise Church of Christ of Boise, Idaho, Inc.,* 96 Idaho 45, 47, 524 P.2d 173, 175 (1974) (citation omitted).

■ This agreement with the railroad is appropriately deemed a license, because, under the terms of the agreement, the railroad can revoke the licensee's privileges without consequence. Therefore, the licensee's rights in the property do not rise to the level of a property right, but instead constitute a revocable privilege to use the property for a specific purpose. In addition, the agreement itself recites that it is a license.

■ Nonetheless, contrary to the Rileys' arguments, this license is not personal to Jim Howe. As the district judge correctly concluded, this agreement, like the water right application involved in the first appeal, was negotiated by Jim Howe for the benefit of all three property owners alive at that time: Lucille Howe, Jim Howe, and Rowan. As a surviving party to the agreement, Rowan is entitled to the license described therein until the license is terminated pursuant to the terms of the agreement.

## IV.

## CONCLUSION

The district judge's decision is upheld on appeal: (1) the district judge correctly concluded Rowan was an accommodation party under the U.C.C. and, therefore, not the proper subject of equitable subrogation; (2) the well equipment is a fixture appurtenant to Rowan's property and belongs to Rowan; and (3) Rowan has the right to enjoy the benefits of the agreement with the railroad until that agreement is terminated according to its own terms. We award costs on appeal to Rowan.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.